**Carl Albert COLLINS, Appellant,**

v.

**A.L. LOCKHART, Director of the Arkansas Department of Correction, Appellee.**

No. 83–2607.

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1984.

Decided Jan. 31, 1985.

Rehearing and Rehearing En Banc Denied April 24, 1985.

Lessenberry & Carpenter by Thomas M. Carpenter, Little Rock, Ark., for appellant.

Steve Clark, Atty. Gen. by Victra L. Fewell, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before McMILLIAN, BENNETT * and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

Carl Albert Collins was convicted by a jury of capital felony murder and sentenced to death. The District Court[1] dismissed his petition for habeas corpus, and he appeals. We affirm the District Court's holding that Collins's conviction was valid. But as to the sentence of death, we agree with Collins that one of the aggravating circumstances found by the jury (that the murder was committed for pecuniary gain) duplicated one of the elements of the crime itself (that the murder was committed in the course of a robbery). This double counting of one aspect of the evidence, in our view, violates the Eighth and Fourteenth Amendments, because the pecuniary-gain aggravating circumstance fails to narrow the class of persons already guilty of robbery murder, as required by Supreme Court opinions before the penalty of death may be imposed. Insofar as the District Court rejected Collins's challenge to his sentence, therefore, its judgment will be vacated, and the cause remanded with instructions. On remand, the District Court will enter judgment reducing Collins's sen-

---

* The Hon. Marion T. Bennett, United States Circuit Judge for the Federal Circuit, sitting by designation.

1. The Hon. William R. Overton, United States District Judge for the Eastern District of Arkansas. The District Court's most recent opinion, *Collins v. Lockhart*, No. PB–C–81–271 (E.D.Ark. Nov. 17, 1983), is unreported.

tence to life imprisonment without parole (the only sentence other than death possible under Arkansas law for capital felony murder), unless the State, within such reasonable time as the District Court may fix, commences proceedings to retry the question of Collins's punishment. In any event, the conviction will stand.

## I.

Collins was convicted in 1974 in the Circuit Court of Washington County, Arkansas. On direct appeal, the Supreme Court of Arkansas affirmed, *Collins v. State*, 259 Ark. 8, 531 S.W.2d 13 (1975). On certiorari, 429 U.S. 808, 97 S.Ct. 44, 50 L.Ed.2d 69 (1976), the United States Supreme Court vacated and remanded to the Supreme Court of Arkansas for reconsideration in light of *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), and companion cases. On reconsideration, the conviction and sentence were again affirmed. 261 Ark. 195, 548 S.W.2d 106 (en banc), *cert. denied*, 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158 (1977). A petition for post-conviction relief under Ark.R.Crim.P. 37 was denied. *Collins v. State*, 271 Ark. 825, 611 S.W.2d 182 (per curiam), *cert. denied*, 452 U.S. 973, 101 S.Ct. 3127, 69 L.Ed.2d 984 (1981).

Collins then filed his petition for federal habeas corpus in the District Court. That court, in a thorough published opinion, *Collins v. Lockhart*, 545 F.Supp. 83 (E.D.Ark. 1982), rejected all of Collins's arguments and dismissed the petition. On appeal, we held that the Supreme Court of Arkansas should be given an opportunity to compare Collins's sentence to those imposed in similar cases, in order to determine whether the death penalty in his case was disproportionate. We directed the District Court to hold the habeas petition in abeyance until this proportionality issue could be presented to the State Supreme Court, along with any other federal claims as to which state remedies might not have been exhausted. 707 F.2d 341, 343–44 (8th Cir.1983). Collins accordingly filed a second Rule 37 petition with the Supreme Court of Arkansas. It

was denied, *Collins v. State*, 280 Ark. 312, 657 S.W.2d 546 (1983) (per curiam), the Court stating that "in comparison with [other capital] cases, we find no basis to alter [the] view" that the death penalty was properly imposed on Collins. *Id.* at 315, 657 S.W.2d at 548. Collins then returned to the District Court, which again dismissed his petition. This appeal followed.

Collins's brief in this Court presents four main points: (1) that counsel was ineffective at the guilt stage of his trial; (2) that counsel was ineffective at the penalty stage of his trial; (3) that the death penalty should be vacated because of the "overbroad" application of the pecuniary-gain aggravating circumstance; and (4) that the proportionality review conducted by the Supreme Court of Arkansas did not comply with due process. The last three points go only to the validity of the death sentence; only the first argument calls in question the conviction itself.

## II.

Collins argues that counsel was ineffective at the guilt stage of his trial in two respects: (1) in not challenging the "death-qualified jury,"—an argument that, we have held in *Grigsby v. Mabry*, 758 F.2d 226 (8th Cir.1985) (en banc), would have been well taken; and (2) in not requesting that an instruction on the lesser included offense of first-degree murder be given. (Counsel did ask that another lesser included offense, second-degree murder, be submitted, and this instruction was given.) The District Court has persuasively explained why these arguments lack merit, 545 F.Supp. at 88, 89–90, and we add only a few words to its discussion.

■ As to the lesser included offense of first-degree murder, counsel explained that he made a tactical choice to go to the jury on capital felony murder and second-degree murder only. The submission of a first-degree-murder instruction would have required counsel to discuss the issues of premeditation and deliberation. At the time

this case was tried, deliberate, premeditated murder was murder in the first degree. Some special circumstance had to be shown (*e.g.*, killing in the course of robbery) to make the crime a capital one. In order to present the first-degree-murder option effectively, counsel might have actually had to argue to the jury that his client was a deliberate and premeditated killer. We can understand why counsel chose not to do so. Giving his choice the heavy measure of deference it deserves under *Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we do not find that counsel made an unreasonable decision.

■ As to the *Grigsby* point, it has never been raised in the state courts, either directly or in terms of an ineffective-assistance-of-counsel argument. See Stipulation, R. 85–89.[2] Nor could it be raised now. The Supreme Court of Arkansas has now made it quite clear that it will not entertain a second or subsequent petition under Rule 37 unless the first petition was specifically denied without prejudice to filing a subsequent petition. *Collins v. State, supra,* 280 Ark. at 315, 657 S.W.2d at 548. Thus, Collins has exhausted his state remedies on this issue, there being no currently available vehicle by which he can now raise the point in the state courts. But since he has failed to raise it there, and since the state courts would treat that failure as a procedural bar to considering the point on its merits now, he is also barred on federal habeas unless he can show both "cause" and "prejudice." We need not discuss the issue of cause, because Collins is utterly unable to show prejudice. We have examined the entire transcript of the testimony at the trial, and we agree with the Supreme Court of Arkansas and with the District Court that the evidence of guilt was overwhelming. As we specifically held in *Pickens v. Lockhart,* 714 F.2d 1455, 1458 n. 2 (8th Cir.1983), the *Grigsby* argument is therefore unavailing.

**2.** The reference is to the original file of the District Court in this case, *Collins v. Lockhart,*

### III.

■ We next address the arguments that Collins's counsel was ineffective at the penalty stage, and that the proportionality review conducted by the Supreme Court of Arkansas was legally insufficient. The District Court's discussion of these issues is completely satisfactory. In short, we agree that counsel made a reasonable judgment that no evidence available for introduction at the penalty stage would have helped Collins. The Supreme Court has now held that comparative proportionality review is not constitutionally required, *Pulley v. Harris,* — U.S. —, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), and the Arkansas Supreme Court has, in any event, now given Collins's case this type of review.

### IV.

#### A.

Defendant's final argument is that one of the statutory aggravating circumstances found by the jury in his case—that the killing was committed for pecuniary gain— is "overbroad," in the sense that it applies to every case of robbery murder (the species of capital felony murder of which defendant was convicted) and therefore fails to distinguish those robber-murderers who deserve the death penalty from those who do not. Thus, the jury is left without sufficient standards to ensure that the death penalty is not freakishly, wantonly, or arbitrarily imposed, in violation of the principles first laid down in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and later elaborated somewhat in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), and companion cases.

Collins was charged under Act 438 of 1973, the first capital-punishment statute enacted in Arkansas after *Furman.* Ark. Stat.Ann. § 41–4701 *et seq.* (Supp.1973). The information, set out in full on page 2 of the record that was before the Supreme Court of Arkansas on direct appeal,

No. PB–C–81–271 (stipulation filed May 18, 1982).

charged that Collins killed John Welch "while engaged in the attempt and perpetration of robbery of John Welch...." The jury found Collins guilty of this offense, defined by the General Assembly as capital felony murder, § 41–4702(A), and he is therefore among the class of persons on whom the death penalty may be imposed under state law. In addition, the jury found beyond a reasonable doubt that three aggravating circumstances existed in Collins's case: (1) that Collins had committed a prior crime of violence; (2) that Collins had created a substantial risk of death or serious physical injury to a person other than the victim; and (3) that Collins committed the murder for pecuniary gain. Ark.Stat. Ann. § 41–4711(b), (c), (e) (Supp.1973). It also found a statutory mitigating circumstance, that Collins was 20 years old at the time the crime was committed. It then became the jury's duty to balance the aggravating and mitigating circumstances against each other and to return a sentence of death only if it found that the mitigating circumstances were not sufficient to outweigh the aggravating circumstances, that the aggravating circumstances were sufficient to justify, beyond a reasonable doubt, the imposition of the sentence of death, and that the defendant should be sentenced to death. Arkansas, thus, unlike some states, required the jury to balance aggravating and mitigating circumstances before imposing the death penalty. Ark.Stat.Ann. § 41–4710(d)(ii) (Supp.1973).

Collins claims that every robbery murder is committed for pecuniary gain, that the finding of the statutory aggravating circumstance involving pecuniary gain therefore adds nothing to the finding of guilt of capital felony murder itself, that it is impossible to know whether the jury would have imposed the death penalty had it known that only two valid statutory aggravating circumstances existed, and that his death sentence should therefore be set aside.

■ The state argues first that this point, which we shall refer to for convenience as the "pecuniary-gain argument,"

was not properly preserved in the state courts, that no "cause" or "prejudice" has been shown, and that the point is therefore not open for consideration by a federal habeas court. We disagree, substantially for the reasons given in *Ruiz & Van Denton v. Lockhart,* 754 F.2d 254 (8th Cir. 1985). The pecuniary-gain argument was raised by Collins's counsel at trial. R. 256–57. It was not argued in Collins's brief on direct appeal, and the Supreme Court of Arkansas's opinion affirming his conviction does not mention the point expressly, but, as we have explained in *Ruiz,* that Court's regular practice in capital cases is to consider on their merits all points properly raised at trial, whether or not argued in the brief on appeal. This practice was followed here. The Supreme Court said:

> We have, as the statute requires, examined all possible errors that might be prejudicial. Ark.Stat.Ann. § 43–2725 (Supp.1973). We find that the defendant received a fair trial, free from prejudicial error.

*Collins v. State, supra,* 259 Ark. at 15, 531 S.W.2d at 17. Thus, the State Supreme Court actually passed on the merits of the federal question that defendant now seeks to present on habeas corpus. Under *Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), there is no procedural bar to the raising of the issue on federal habeas, and we therefore now turn to the merits.

### B.

Collins's attack on the use of the pecuniary-gain aggravating circumstance breaks down into two subissues: (1) whether pecuniary gain can, as a matter of federal constitutional law, be validly used as an aggravating circumstance when the underlying capital crime is murder committed during the course of a robbery; and (2) if not, whether the sentence of death is nevertheless constitutional or consistent with state law because two unquestionably valid aggravating circumstances were also found by the jury.

### 1.

We start by laying the state-law predicate against which Collins's argument must be considered. Under Arkansas law as it existed in 1974, when Collins's crime was committed and he was tried, only certain kinds of murder were defined as capital crimes. The traditional offense of first-degree murder still existed, but it was punishable only by life imprisonment. In order to secure the death penalty, the state needed to show one of six specific types of killing. In Collins's case, the crime charged was "the unlawful killing of a human being when committed by a person engaged in the perpetration of ... robbery." Ark. Stat.Ann. § 41–4702(A) (Supp.1973). Robbery was one of six felonies listed in this subsection (A). But a finding of killing in the course of a listed felony was not itself sufficient to warrant the imposition of the death sentence. The jury also had to find at least one aggravating circumstance, and this circumstance had to be one of the six listed in the statute § 41–4711. (As a matter of state law, nonstatutory aggravating circumstances may not be considered, though nonstatutory mitigating circumstances may be. *Giles v. State*, 261 Ark. 413, 420, 549 S.W.2d 479, 483 (en banc), *cert. denied*, 434 U.S. 894, 98 S.Ct. 272, 54 L.Ed.2d 180 (1977)).

■ In Collins's case, as we have previously noted, three aggravating circumstances were found. One of them was that "the capital felony was committed for pecuniary gain." § 41–4711(e). There is no doubt that this aggravating circumstance duplicates an element of the underlying capital felony, and we do not understand the state to contend otherwise. In 1974, the relevant time for present purposes, robbery was defined as "the felonious and violent taking of any goods, money or other valuable thing from the person of another by force or intimidation...." Ark.Stat. Ann. § 41–3601 (Repl.1964); see commentary to Ark.Stat.Ann. § 41–2103 (Repl.1977). It is precisely the violent taking of money from the person killed that supplies the element of robbery in the underlying capi-

tal felony. Thus, once Collins had been convicted of capital felony murder, specifically charged in the information as murder in the course of a robbery, the jury had necessarily found one aggravating circumstance. In fact, the state made precisely that argument to the jury in the penalty phase of this case.

[THE PROSECUTING ATTORNEY]: You are instructed by the law that another aggravating circumstance that you shall consider is whether or not the commission of this particular crime was for pecuniary gain. *You have already determined that yesterday* that this crime was committed by the defendant for money, for pecuniary gain. I submit to you that is the third most aggravating circumstance in this case.

R. 288–89 (Emphasis ours).

■ The Supreme Court of Arkansas has several times interpreted the statute exactly as it was applied here. The aggravating circumstance of pecuniary gain, the Court has held, is "not limited to a killing for hire, but is also clearly applicable to a murder committed during a robbery." *Miller v. State*, 269 Ark. 341, 356, 605 S.W.2d 430, 440 (1980), *cert. denied*, 450 U.S. 1035, 101 S.Ct. 1750, 68 L.Ed.2d 232 (1981); *Woodard v. State*, 261 Ark. 895, 905–06, 553 S.W.2d 259, 265 (1977) (en banc), *cert. denied*, 439 U.S. 1122, 99 S.Ct. 1034, 59 L.Ed.2d 83 (1979). The use of the pecuniary-gain aggravating circumstance, then, was not a violation of state law, and defendant does not argue that it was.

The question, rather, is whether use of an aggravating circumstance that duplicates an element of crime itself is a violation of the Eighth Amendment, as applied to the states by the Due Process Clause of the Fourteenth Amendment. Two recent Supreme Court opinions, *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (plurality opinion), and *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), clearly indicate that such a violation has occurred here. Aggravating circumstances, in order to comply with the Eighth Amendment, must

"genuinely narrow the class of persons eligible for the death penalty and ... reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Id.* 103 S.Ct. at 2742–43 (footnote omitted). An aggravating circumstance is an objective criterion that can be used to distinguish a particular defendant on whom the jury has decided to impose the death sentence from other defendants who have committed the same underlying capital crime. Aggravating circumstances serve to reduce the danger that the death penalty will be wantonly or arbitrarily imposed, a danger that was uppermost in the Court's mind when *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), was decided. Thus, in *Godfrey* the Court struck down an aggravating circumstance that was so vaguely and generally worded that it failed to narrow the class of persons eligible for the death penalty. "[S]tatutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty." *Zant*, 103 S.Ct. at 2743.

We see no escape from the conclusion that an aggravating circumstance which merely repeats an element of the underlying crime cannot perform this narrowing function. Every robber-murderer has acted for pecuniary gain. A jury which has found robbery murder cannot rationally avoid also finding pecuniary gain. Therefore, the pecuniary-gain aggravating circumstance cannot be a factor that distinguishes some robber-murderers from others. In effect, a robber-murderer enters the sentencing phase with a built-in aggravating circumstance. Since under Arkansas law and the Eighth Amendment as elaborated by the Supreme Court in *Godfrey v. Georgia, supra,* only one aggravating circumstance is required to impose the death penalty, the State has no need to show any additional aggravating circumstances at the sentencing phase. Thus, if no other aggravating or mitigating circumstances are found, the jury is left to decide whether to impose death on a robber-murderer without having made any finding that narrows the class of those who have committed this death-eligible crime.[3]

Perhaps the best argument in support of the view that the Constitution permits use of pecuniary gain as an aggravating circumstance in this kind of case was made by Chief Judge Eisele in *Woodard v. Sargent,* 567 F.Supp. 1548, 1575–76 (E.D.Ark.1983),

---

**3.** Although other courts have rejected challenges based on "double counting," these cases did not explicitly address the argument that double counting allows for arbitrary imposition of the death sentence, but rather focus on the argument that double counting imposes a disproportionate punishment on a specific group of death-eligible criminals. See, *e.g., Adams v. Wainwright,* 709 F.2d 1443, 1447 (11th Cir.1983) (per curiam), *cert. denied,* —— U.S. ——, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984); *Gray v. Lucas,* 677 F.2d 1086, 1104–05 (5th Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983); *Dobard v. State,* 435 So.2d 1338, 1344 (Ala.Cr.App.1982), —— U.S. ——, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984); *Leatherwood v. State,* 435 So.2d 645, 650 (Miss.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1455, 79 L.Ed.2d 772 (1984); *State v. Pritchett,* 621 S.W.2d 127, 140–41 (Tenn. 1981). *But cf. Armstrong v. State,* 399 So.2d 953, 962 (Fla.1981), *cert. denied,* —— U.S. ——, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983); *People v. Starnes,* 88 Ill.App.3d 1141, 44 Ill.Dec. 219, 411 N.E.2d 125 (1980); *State v. Stewart,* 197 Neb. 497, 250 N.W.2d 849 (1977); *State v. Cherry,* 298 N.C. 86, 257 S.E.2d 551 (1979), *cert. denied,* 446

U.S. 941, 100 S.Ct. 2165, 64 L.Ed.2d 796 (1980); *Glidewell v. State,* 663 P.2d 738 (Okl.Cr.1983).

In *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), and *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the Supreme Court upheld statutes under which one of the aggravating circumstances repeated one of the elements of the underlying capital offenses. We do not believe that *Gregg* and *Proffitt* are controlling in the present situation. For one thing, there was no opinion of the Court in either case, so it is difficult to know the rationale on which they were based. More fundamentally, the challenge to the Georgia and Florida statutes made in *Gregg* and *Proffitt* was a facial one. They were not challenged as applied to any particular set of facts, and the double-counting argument now advanced by Collins was not made. (Indeed, in *Proffitt v. Wainwright,* 685 F.2d 1227, 1261–69 (11th Cir. 1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983), the Court held that one of the aggravating circumstances contained in the Florida statute was unconstitutionally vague even though the Supreme Court had upheld the statute on its face in Proffitt's own case.)

*rev'd on other grounds,* 753 F.2d 694, No. 83–2168 (8th Cir. January 31, 1985). We think of this argument as a sort of bottom-line proposition. It runs something like this: If Arkansas had defined any deliberate, premeditated murder as capital felony murder, and then prescribed the commission of that murder for pecuniary gain as one of the statutory aggravating circumstances, no one could claim that double counting had occurred. Yet, under such a statutory scheme, a defendant could be sentenced to death who had done no more than what Collins did here. Although this argument is not without appeal, we do not accept it. It is for the General Assembly of Arkansas, not the federal courts, to specify those particular types of killing that it considers worthy of death. Having made its specification, it must then, before the death sentence may validly be imposed, also require that the jury find at least one statutory aggravating circumstance. If an element of the crime is permitted to double as an aggravating circumstance, this requirement is avoided completely. The duplication in this case is a consequence of how the State of Arkansas has chosen to define capital felony murder. That the state could have defined the crime in some other way is beside the point. We take the law of the state as we find it, and to that law we apply the principles of the Eighth Amendment as elaborated by the decisions of the Supreme Court. We conclude that pecuniary gain may not be used as an aggravating circumstance in this case, and that if no other statutory aggravating cir-

cumstances had been found, the death sentence would have to be set aside. *Godfrey v. Georgia, supra.*

2.

Here, though, other statutory aggravating circumstances were validly found. A number of reported opinions have upheld the death sentence under such circumstances.[4] All of these cases, we think, are distinguishable from the present one in at least one critical respect. In order to explain why, we must first examine the Supreme Court's recent holdings in *Zant v. Stephens, supra,* and *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983).

*Stephens* clearly sets out the framework against which the issue must be analyzed. There, one of three statutory aggravating circumstances found by the jury was subsequently held invalid, although the other two aggravating circumstances were upheld. "The question ... whether [the] death penalty must be vacated ... depends on the function of the jury's finding of an aggravating circumstance under Georgia's capital sentencing statute, and on the reasons that the aggravating circumstance at issue in this particular case was found to be invalid." 103 S.Ct. at 2736. The particular aggravating circumstance involved in *Stephens* was "a substantial history of serious assaultive criminal convictions." Georgia Code § 27–2534.1(b)(1). The Georgia Supreme Court had struck down this circumstance as unconstitutionally vague. Thus, the ground of invalidation was not

---

**4.** See, *e.g., Barfield v. Harris,* 719 F.2d 58 (4th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1984) (jury found three statutory aggravating circumstances, none of which was attacked as invalid; jury might also have relied on a fourth, nonstatutory aggravating circumstance, but if it did so, only a violation of state law was shown; no federal constitutional attack made on the fourth, nonstatutory aggravating circumstance as such); *Ford v. Strickland,* 696 F.2d 804, 813–15 (11th Cir.) (per curiam) (en banc), *cert. denied,* —— U.S. ——, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983) (arising under Florida law; when one aggravating circumstance drops out, Florida Supreme Court uses, in substance, a harmless-error analysis; such a procedure does not violate the Eighth

Amendment); *Williams v. Maggio,* 679 F.2d 381, 386–90 (5th Cir. Unit A 1982) (en banc), *cert. denied,* —— U.S. ——, 103 S.Ct. 3553, 77 L.Ed.2d 1399 (1983) (arising under Louisiana law; three statutory aggravating circumstances found; Supreme Court of Louisiana reviews the sufficiency of the evidence with respect to only one; procedure held not to violate Eighth Amendment). *But see, e.g., Proffitt v. Wainwright, supra,* 685 F.2d at 1268–69 (arising under Florida law; consideration of nonstatutory aggravating factors, in violation of state law, cannot be harmless error) (probably no longer good law after *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), discussed in text below).

that the aggravating circumstance involved some kind of conduct, for example speech, entitled to affirmative constitutional protection. In *Stephens*, therefore, the Supreme Court held that the rule of *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), providing that a jury verdict based on multiple grounds must be set aside if one of those grounds involved conduct protected by the First Amendment, did not apply. So far, *Stephens* is in point as far as Collins's case is concerned. The pecuniary-gain circumstance present here does not involve conduct protected by the federal Constitution any more than did the circumstance involved in *Stephens*.

The other portion of the *Stephens* analysis, however, sharply distinguishes that case from this one. The Court paid careful attention to the state-law premises underlying the Georgia Supreme Court's determination that Stephens's death sentence could be upheld on the basis of the two remaining valid statutory aggravating circumstances. In fact, the Supreme Court would not even address the merits of the federal constitutional issue in Stephens's case until the Georgia Supreme Court, on certification from the Supreme Court of the United States, *Zant v. Stephens*, 456 U.S. 410, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982), had specifically discussed the state-law rationale for its holding. That rationale, in substance, was as follows: Under Georgia law, one statutory aggravating circumstance must be found before the penalty of death can be imposed. But the finding of only one such circumstance is sufficient to put a defendant in the death-eligible class. Once in that class, the jury may in its discretion impose the death penalty on the basis of all the facts and circumstances of the case. It is not specifically required to weigh aggravating circumstances against mitigating circumstances. "In Georgia, unlike some other States, the jury is not instructed ... to balance aggravating against mitigating circumstances pursuant to any special standard." *Zant v. Stephens*, 103 S.Ct. at 2741 (footnote omitted). Therefore, a valid finding of two statutory aggravating circum-

stances sufficiently serves to differentiate Stephens's case from those of other defendants on whom the death sentence was not imposed. "[T]he narrowing function has been properly achieved in this case by the two valid aggravating circumstances upheld by the Georgia Supreme Court ...." *Id.* 103 S.Ct. at 2744.

The Court's opinion specifically mentions Arkansas as one of the states in which supreme courts have set aside death sentences based on both valid and invalid aggravating circumstances. "[I]n each of these States, not only must the jury find at least one aggravating circumstance in order to have the power to impose the death sentence; in addition, the law requires the jury to weigh the aggravating circumstances against the mitigating circumstances when it decides whether or not the death penalty should be imposed. See Ark.Stat. Ann. § 41–1302(1)." *Id.* 103 S.Ct. at 2741 n. 12. And at the conclusion of its opinion, the Court warns that "in deciding this case we do not express any opinion concerning the possible significance of a holding that a particular aggravating circumstance is 'invalid' under a statutory scheme in which the judge or jury is specifically instructed to weigh statutory aggravating and mitigating circumstances in exercising its discretion whether to impose the death penalty. See n. 12 *supra*." *Id.* 103 S.Ct. at 2750.

This, then, is a case in which the Court in *Stephens* expressly declined to offer an opinion. It is also a case in which a critical element of the *Stephens* analysis—that state law did not require weighing of aggravating against mitigating circumstances—is absent. In *Barclay* the Court upheld the use of nonstatutory aggravating circumstances, even when state law was thereby violated, and it did so in a case involving Florida law, under which judge and jury do weigh aggravating circumstances against mitigating circumstances. But the Florida practice involved in *Barclay* is also different in a critical respect from the practice in Arkansas.

In Florida, if one of several aggravating circumstances drops out for some legal reason, the Florida Supreme Court proceeds to apply essentially a harmless-error analysis. It examines all of the evidence in the record and "upholds death sentences ... only when it actually finds that the error is harmless." 103 S.Ct. at 3428 (plurality opinion). So long as the evidence that established the invalid, nonstatutory aggravating circumstance was properly before the jury for some purpose, that is, so long as that evidence related to the circumstances of the crime or of the offender, the appellate court can properly consider it, and it is free, under state law, to affirm the death sentence if persuaded that the finding of an invalid aggravating circumstance had no appreciable effect on the verdict.[5]

In Arkansas, the practice is decisively different. Here, unlike Georgia, weighing does take place. The jury is told that it must weigh, and it may not return a verdict of death unless it specifically finds, in writing, that the mitigating circumstances do not outweigh the aggravating circumstances. Furthermore, unlike the practice in Florida, if an aggravating circumstance is held invalid for any reason, the Supreme Court of Arkansas does not engage in any sort of harmless-error analysis. The death penalty is automatically reduced to life imprisonment, unless the state chooses to retry the question of punishment to a second jury. The rule is stated in *Williams v. State*, 274 Ark. 9, 12, 621 S.W.2d 686, 687, *cert. denied*, 459 U.S. 1042, 103 S.Ct. 460, 74 L.Ed.2d 611 (1981), the very Arkansas case cited by the Supreme Court in *Stephens*, 103 S.Ct. at 2741 n. 12. After holding that there was no substantial basis in the evidence for a jury finding of a particular aggravating circumstance, the Arkansas Supreme Court said:

> We cannot, as the State urges us to do, hold the error to be harmless on the theory that the jury found two other aggravating circumstances and no mitigating ones. The jury must find not only that the aggravation outweighs the mitigation but also that the aggravating circumstances "justify a sentence of death beyond a reasonable doubt." § 41–1302(1)(c). In a death case we are not in a position to speculate about what the jury might have done if it had found only two aggravating circumstances instead of three. Hence, following the practice adopted in *Giles v. State*, 261 Ark. 413, 549 S.W.2d 479 (1977), *cert. den.*, 434 U.S. 894 [98 S.Ct. 272, 54 L.Ed.2d 180] (1977), we direct that the sentence be reduced to life imprisonment without parole unless the Attorney General requests within 17 days that the case be remanded for a new trial.

274 Ark. at 12–13, 621 S.W.2d at 688–89.

█ In *Stephens* the Supreme Court upheld the death sentence because a state-law scheme not requiring weighing of aggravating against mitigating circumstances was still thought sufficiently certain to rule out arbitrary sentencing, so long as at least one valid statutory aggravating circumstance was found. In *Barclay* a death sentence was upheld because the State Supreme Court, after setting aside two invalid aggravating circumstances, examined the whole record and held that the sentence would have been imposed anyway, on the basis of validly found aggravating circumstances. But in Arkansas, as a matter of state law, once an aggravating circumstance drops out, the sentence of death must be set aside. The reasoning underlying *Stephens* and *Barclay* is therefore inapplicable here, and the presence of an invalid aggravating circumstance means that the sentence of death cannot stand. This position does not place us in conflict with the opinions of the Fifth and Eleventh Circuits referred to above, because those cases all arose in states, Georgia, Florida, and Louisiana, which have adopted a quite

---

**5.** See also *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983) (per curiam), in which the trial judge, imposing a sentence of death, may have improperly considered a nonstatutory aggravating circumstance, in violation of state law, but the Supreme Court of Florida, in affirming the sentence, did not consider this factor.

different approach to appellate review of capital sentences.

## V.

We conclude that, although Collins's conviction is valid and will stand, the death sentence must be set aside. We think the words of Mr. Justice Blackmun are apposite here:

> The final result reached by the [Arkansas] courts ... in [Collins's] case may well be deserved, but [we] cannot be convinced of that unless the legal process of the case has been cleansed of error that is so substantial. The end does not justify the means even in what may be deemed to be a "deserving" capital punishment situation.

*Barclay*, 103 S.Ct. at 3446 (dissenting opinion).

So much of the judgment of the District Court as dismissed Collins's challenge to his conviction is affirmed. But to the extent that the judgment below upheld the sentence of death, it is reversed, and the cause remanded to the District Court with directions to reduce Collins's sentence to life imprisonment without parole, unless the State of Arkansas, within such reasonable time as the District Court may fix, commences proceedings to retry the question of punishment.

It is so ordered.