Charles Laverne
SINGLETON, Appellant,

v.

A.L. LOCKHART, Commissioner,
Arkansas Department of
Correction, Appellee.

Charles Laverne SINGLETON, Appellee,

v.

A.L. LOCKHART, Commissioner,
Arkansas Department of
Correction, Appellant.

Nos. 86–2263, 86–2289.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 18, 1988.

Decided April 10, 1989.

Rehearing and Rehearing En Banc Denied
May 9, 1989.

Jeff Rosenzweig, Little Rock, Ark., for appellant Singleton.

Jo Ann Goldman, Little Rock, Ark., for appellant Perry.

Clint Miller, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before JOHN R. GIBSON, FAGG, and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Charles Laverne Singleton appeals the district court's order denying in part his petition for habeas corpus relief under 28 U.S.C. § 2254 (1982). The State cross-appeals the court's order vacating Singleton's death sentence. We affirm the order upholding Singleton's conviction, reverse the order vacating the death sentence, and remand for reinstatement of the death sentence.

## I.

On the evening of June 1, 1979, a man entered York's Grocery Store in Hamburg, Arkansas, stabbed the storekeeper, Mary Lou York, twice in the neck, and took an undetermined amount of money. Before York died on the way to the hospital, she told several witnesses that Singleton was the man who had stabbed her.

In July of 1979, a jury in Ashley County, Arkansas, convicted Singleton of capital murder for committing a homicide during the course of a felony. See Ark.Stat.Ann. § 41–1501.[1] In a separate penalty phase trial, the jury found a single aggravating circumstance—that pecuniary gain was a motive for the murder—and sentenced Singleton to death by electrocution. See Ark. Stat.Ann. §§ 41–1302, 41–1303. The Supreme Court of Arkansas affirmed,[2] Singleton v. State, 274 Ark. 126, 623 S.W.2d 180, 183 (1981), cert. denied, 456 U.S. 938, 102 S.Ct. 1996, 72 L.Ed.2d 458 (1982), and denied, without opinion, Singleton's petition for post-conviction relief under Ark.R.Crim. P. 37. The United States Supreme Court denied certiorari. Singleton v. Arkansas, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1983).

---

1. This decision cites to the Arkansas statutes in effect at the time of Singleton's trial. The Arkansas Code of 1987 enacted no substantive alterations in the sections relevant to Singleton's conviction.

2. Singleton was also convicted of aggravated robbery and sentenced to life imprisonment for that crime. The Arkansas Supreme Court set aside this lesser included offense. Singleton v. State, 274 Ark. 126, 623 S.W.2d 180, 181 (1981), cert. denied, 456 U.S. 938, 102 S.Ct. 1996, 72 L.Ed.2d 458 (1982).

In 1982, Singleton filed a petition for writ of habeas corpus with the district court. On February 14, 1985, he filed a supplement to his petition, challenging his death sentence under *Collins v. Lockhart,* 754 F.2d 258 (8th Cir.), *cert. denied,* 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985). The court affirmed Singleton's conviction for capital murder, but vacated his death sentence in accordance with *Collins. See Singleton v. Lockhart,* 653 F.Supp. 1114, 1117 (E.D.Ark.1986).

On appeal, Singleton raises two major issues: (1) he was denied his constitutional right to a jury selected from a venire representing a fair cross-section of the community where he was tried; and (2) he was denied his constitutional right to effective assistance of counsel. The State also raises two issues: (1) the district court erred in retroactively applying *Collins;* and (2) the court erred in prohibiting the State from retrying the penalty phase of Singleton's trial. The case was submitted November 13, 1987. On January 13, 1988, the United States Supreme Court decided *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). We requested additional briefing and argument on the *Collins* issue in the light of *Lowenfield,* and the case was resubmitted following reargument on August 18, 1988.

## II.

At the time of Singleton's trial, Ashley County used a jury commissioner system to create a master list of prospective jurors. The seven jury commissioners in Ashley County, six of whom were white and one of whom was black, selected prospective jurors from the voter registration lists. Two of the jury commissioners acknowledged at the habeas hearing that they had selected some potential jurors on the basis of what those commissioners believed to be their good character. After the commissioners compiled a list of eight hundred names, either the trial judge or the clerk of the court chose a venire by pulling numbered disks from a box. The disks were numbered one to eight hundred and corresponded to the names on the master list.

The first venire panel at Singleton's trial consisted of forty-three people summoned by mail after being selected as described above. When this panel was exhausted, another thirty-three persons were impaneled. The second group was summoned by telephone during the voir dire of the first group as soon as it became apparent that the original panel would be insufficient to seat a jury. They were telephoned by the local deputy sheriff, who testified at the habeas hearing that she called people in the order in which their names appeared on the list. The second group appeared within a matter of hours.

Singleton claims that two distinct groups of Ashley County residents, blacks and a somewhat vague "economic" class consisting of people without phones and people who are not ordinarily home during the day, were unfairly underrepresented on the venire from which his jury was selected, in violation of *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), and *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Singleton does not challenge the composition of the venire on equal protection grounds and does not contest the constitutionality of the Arkansas jury commissioner system or the petit jury that tried him.

The State first argues that Singleton is procedurally barred from challenging the racial and economic composition of the venire because he failed to make a timely objection at trial, as required by *Wainwright v. Sykes,* 433 U.S. 72, 90–91, 97 S.Ct. 2497, 2508–09, 53 L.Ed.2d 594 (1977). An examination of the record, however, reveals that Singleton's trial counsel made a timely objection to the process by which the venire was selected on the ground that it excluded certain sectors of the population. Although Singleton's counsel specifically referred to those Ashley County residents without phones, we will treat his motion as having objected to the discriminatory exclusion of any identifiable group, including blacks.

Under the sixth amendment, as applied to the states by the due process clause of the fourteenth amendment, criminal defen-

dants have a right to be tried "by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const., amend. VI. The Supreme Court has interpreted this to mean that the venire from which a jury is chosen must be a "representative cross section of the community" where the defendant is tried. *Taylor*, 419 U.S. at 528, 95 S.Ct. at 696. A venire selection process that "systematically exclude[s] distinctive groups in the community" will result in a venire that is not fairly representative. *Id.* at 538, 95 S.Ct. at 702.

■ For a defendant to establish a prima facie case of discrimination in the selection of a venire panel, he must show:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren*, 439 U.S. at 364, 99 S.Ct. at 668. To demonstrate the existence of systematic exclusion, a defendant must prove unfair underrepresentation of the excluded group on his venire and in general on other venires in the relevant judicial system near the time of his trial. *Id.* at 366, 99 S.Ct. at 669 (petitioner successfully demonstrated systematic exclusion by establishing that "discrepanc[ies] occurred not just occasionally, but in every weekly venire for a period of nearly a year"); *Euell v. Wyrick*, 714 F.2d 821, 822–23 (8th Cir.1983); *United States ex rel. Shepherd v. Wyrick*, 675 F.2d 161, 162 (8th Cir.1982).

■ We note that although the random use of voter registration lists to select venires has been approved many times, *see, e.g., Brown v. Lockhart*, 781 F.2d 654, 656 (8th Cir.1986), a "key man" system in which commissioners select persons they know is highly suspect and provides an "obvious opportunity to discriminate." *Ross v. Wyrick*, 581 F.2d 172, 174 (8th Cir.1978); *see Castaneda v. Partida*, 430 U.S. 482, 497, 97 S.Ct. 1272, 1281, 51 L.Ed. 2d 498 (1977). Although such a system is disfavored, Singleton still must establish the three elements of the *Duren* test.[3]

■ According to the 1980 census, the population of Ashley County was 26,538, including 7,237 blacks. Blacks therefore accounted for 27.2% of the population as a whole. The first panel of forty-three consisted of thirty-one whites and twelve blacks, with blacks comprising 27.9% of the panel. The second venire panel consisted of twenty-seven whites and six blacks, or in other words was 18.2% black. The entire venire, the original group summoned by mail and the second group called by phone, was 23.7% black. The variation between the percentage of blacks in the total population of Ashley County compared with the overall percentage of blacks on both venires was 3.6%.[4]

In the face of this small discrepancy, we find that the representation of blacks on the venire was statistically fair and reasonable in relation to their percentage in the population. Accordingly, Singleton's claim does not satisfy the second requirement of the *Duren* test. *See, e.g., Euell*, 714 F.2d at 823 (discrepancy of 7.5% not significant underrepresentation); *Shepherd*, 675 F.2d at 163 (discrepancy of 22% not "constitutionally offensive"); *see also United States v. Clifford*, 640 F.2d 150, 155 (8th Cir.1981) (discrepancy of 7.2% not unfair) (citing *Swain v. Alabama*, 380 U.S. 202, 208–09, 85 S.Ct. 824, 829–30, 13 L.Ed.2d 759 (1965)

---

**3.** The fact that the jury commissioners may have been serving beyond the expiration of their appointment in contravention of Arkansas state law is irrelevant in a federal habeas corpus proceeding. *See Wainwright v. Goode*, 464 U.S. 78, 83–84, 104 S.Ct. 378, 381–82, 78 L.Ed.2d 187 (1983). We are concerned solely with Singleton's ability to demonstrate constitutional error on the issues he has raised. *Id.*

**4.** Singleton failed to present any evidence on the numbers of people without phones or who are not home during the day, either in the population as a whole, or on his or any other venire.

(underrepresentation by up to 10% not prima facie evidence of discrimination)); *cf. Duren*, 439 U.S. at 366, 99 S.Ct. at 669 (discrepancy of approximately 39% unfair); *Taylor*, 419 U.S. at 524–25, 95 S.Ct. at 694–95 (discrepancy of approximately 43% unconstitutional).

Even were we to treat Singleton's claim as satisfying the second prong of the *Duren* test, either by analyzing the numbers less literally in light of the "opportunity to discriminate" inherent in the key man system, or by looking solely at the numbers from the second venire panel, Singleton failed to offer proof of systematic exclusion. Singleton presented no evidence whatsoever, as he is required to do, of the racial makeup of other venires in Ashley County near the time of his trial. *See, e.g., Euell*, 714 F.2d at 822–23 (citing *Duren*, 439 U.S. at 366, 99 S.Ct. at 669); *United States v. Whiting*, 538 F.2d 220, 222 (8th Cir.1976). Evidence of a discrepancy on a single venire panel cannot demonstrate systematic exclusion. Singleton did not present any evidence as to the frequency with which venirepersons in Ashley County were summoned by phone or the racial makeup of other venires summoned by phone. Nor did Singleton contradict the testimony of the jury commissioners or deputy sheriff that their work was performed without regard to race. In short, Singleton did not establish the existence of systematic exclusion because he offered no evidence that would allow us to conclude that the racial disproportion, whatever its size, was "quite obviously due to the *system* by which juries were selected." *Duren*, 439 U.S. at 367, 99 S.Ct. at 670.

■ For this same reason, we need not decide whether persons without telephones or persons who are away from home during the day are a distinctive group within the meaning of the first tier of the *Duren* test. *See Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 1765, 90 L.Ed.2d 137 (1986) (factors in defining a distinctive

group); *Hobbs v. Lockhart*, 791 F.2d 125, 129 (8th Cir.1986); *United States v. Hanson*, 618 F.2d 1261, 1267–68 (8th Cir.), *cert. denied*, 449 U.S. 854, 101 S.Ct. 148, 66 L.Ed.2d 67 (1980). Any such showing would be ultimately irrelevant, in light of Singleton's failure to demonstrate systematic exclusion. We conclude that Singleton did not establish a prima facie case of discrimination.

### III.

Singleton's ineffective assistance of counsel claim is governed by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which sets forth the following two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* 466 U.S. at 687, 104 S.Ct. at 2064.[5]

At one point during voir dire, Singleton's counsel exhausted the bulk of his then remaining peremptory challenges to strike four potential jurors whom the district court would not excuse for cause. Subsequently, in response to questioning by the State, a potential juror named Smith testified that a relative of his had been murdered twelve years before the date of Singleton's trial, but that he could be impartial, had no preconceived ideas on the issue of Singleton's guilt, and would follow the

---

5. Although the district court did not rule on the question of ineffective assistance of counsel, Singleton raised the issue there, and that court set out the pertinent facts. As ineffective assistance of counsel is a mixed question of law and fact, *see Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070, *Thomas v. Lockhart*, 738 F.2d 304, 307 (8th Cir.1984), we may apply the law to the facts as found by the district court.

court's instructions. Singleton's counsel then conducted a brief voir dire without questioning Smith about his murdered relative and pronounced him acceptable to the defense. Smith was then seated.

On appeal, the Arkansas Supreme Court refused to hear Singleton's claim that the trial court had committed error by denying the challenges for cause of the earlier four potential jurors, concluding that the claim had not been preserved for appeal because counsel did not note on the record that he would have struck any other juror if he had had more peremptories. *Singleton*, 623 S.W.2d at 181. Therefore, because Singleton could not show that "an objectionable juror was forced on him," he was unable to show prejudice. *Id.*

Singleton also argues that counsel was ineffective because his voir dire of Smith was too brief and because Smith should have been challenged for cause. At the habeas hearing, counsel testified that he conducted a limited voir dire to avoid antagonizing Smith, because as his peremptories were exhausted and the trial court had denied four of his challenges for cause, he doubted that he could keep Smith off the jury.

■ We agree with the Arkansas Supreme Court that the lack of an objection to Smith's seating precludes appellate review of the trial court's alleged error. The failure of counsel to timely object in state court bars Singleton from raising the issue on habeas corpus, absent a showing of cause for the failure to object and resulting actual prejudice. *See Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed. 2d 783 (1982) (reaffirming *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed. 2d 594 (1977)); *Hobbs*, 791 F.2d at 129; *Graham v. Mabry*, 645 F.2d 603, 605 (8th Cir.1981). Singleton can show neither. Counsel's decision not to question Smith more extensively or challenge him for cause was a tactical one made with full awareness of all attendant circumstances. We see no manifest injustice in holding Singleton to that decision. *See Graham*, 645 F.2d at 606–08. In addition, Singleton cannot demonstrate any prejudice resulting

from Smith's seating. There is nothing in the record indicating actual bias on the part of Smith; in fact, the record indicates the opposite. Absent a showing of prejudice, Singleton's claim that counsel was ineffective during voir dire must fail. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

■ Singleton contends that his trial counsel rendered ineffective assistance in arguing both that Singleton was innocent and requesting a lesser included offense charge. We conclude that this was a reasonable tactical decision, however, and as such deserving of great deference. *See Strickland*, 466 U.S. at 690, 104 S.Ct. at 2065. There is nothing unusual about arguing inconsistent or alternative theories of defense. *See, e.g., Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988) (assertion of innocence and entrapment). In light of the potential penalty Singleton faced, gambling on an all-or-nothing defense could well have been less reasonable than arguing a fallback position in addition to a claim of total innocence.

■ In any event, we find that Singleton's ineffective assistance of counsel claims must fail, as he cannot establish any prejudice, the second tier of the *Strickland* test. *See, Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Singleton alleges no particular prejudice other than his conviction, and after reviewing the strength of the State's case, we conclude that there is no reasonable probability that the outcome of Singleton's trial would have been different but for counsel's alleged errors. *See id.* at 694, 104 S.Ct. at 2068.

The evidence against Singleton was overwhelming and uncontroverted. Noting that York had first-hand knowledge of Singleton's identity, the Supreme Court of Arkansas summarized the testimony of the State's witnesses as follows:

Patti Franklin [Singleton's cousin] saw her relative Singleton enter York's Grocery at approximately 7:30 p.m. on the day of the crime. Shortly after he entered Patti heard Mrs. York scream, "Patti go get help, Charles Singleton is

killing me." Patti then ran for help. Another witness, Lenora Howard, observed Singleton exit the store and shortly thereafter witnessed Mrs. York, who was "crying and had blood on her," come to the front door. Police Officer Strother was the first to arrive at the scene and found Mrs. York lying in a pool of blood in the rear of the store. The officer testified Mrs. York told him that Charles Singleton "came in the store, said this is a robbery, grabbed her around the neck, and went to stabbing her." She then told Officer Strother that "there's no way I can be all right, you know I'm not going to make it. I've lost too much blood." Mrs. York was taken to the hospital in an ambulance and was attended by her personal physician, Dr. J.D. Rankin. While enroute to the hospital, she told Dr. Rankin several times that she was dying and that Singleton did it. Mrs. York died before reaching the emergency room of the hospital.

*Singleton,* 623 S.W.2d at 181. In the face of this evidence, Singleton's primary defense was an attack on the inconsistencies between the witnesses' descriptions of his hairstyle.

The sixth amendment guarantee of effective assistance of counsel is a prophylactic right designed to ensure that the defendant receives a fair trial. *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063. Unless the defendant shows both "deficient performance [and] sufficient prejudice," a claim for ineffective assistance of counsel must fail because the defendant cannot show that the adversary process has been rendered fundamentally unfair. *Id.* at 700, 104 S.Ct. at 2071. In light of the evidence against Singleton, we cannot find that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 2473–74, 91 L.Ed.2d 144 (1986) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068); *Blackmon v. White,* 825 F.2d 1263, 1265 (8th Cir.1987);

*Colvin v. United States,* 799 F.2d 427, 429 (8th Cir.1986).

### IV.

Singleton also raises, in conclusory fashion, two additional claims: one, that the statute under which he was convicted was impermissibly vague, and two, that the overlapping definitions of capital murder and first-degree murder in the Arkansas Criminal Code gives the prosecutor and jury excessive discretion. Neither of these claims was raised on direct appeal, and therefore, absent a showing of cause and actual prejudice, Singleton is barred from raising them now. *Engle v. Isaac,* 456 U.S. at 129, 102 S.Ct. at 1572; *Hobbs,* 791 F.2d at 129. Singleton offers no evidence of either.

### V.

 The State cross-appeals, objecting to the district court's retroactive application of *Collins v. Lockhart,* 754 F.2d 258 (8th Cir.), *cert. denied,* 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985), and requesting an opportunity to resentence Singleton. The State's cross-appeal, however, is moot. In *Perry v. Lockhart,* 871 F.2d 1384 (8th Cir.1989), decided this day, we held that *Collins* has been implicitly overruled by *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). We also held that the rule of law applied in *Lowenfield* and announced in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), applied to Perry's case because it was the law in existence at the time of Perry's conviction. For the reasons stated in *Perry,* we reverse the order setting aside the death sentence.[6]

We affirm the district court's order upholding the conviction, reverse the order regarding the sentence, and remand the case to the district court with instructions to reinstate the death sentence.

---

**6.** Singleton raised the *Collins* issue in the district court by way of a supplemental petition filed on February 14, 1985. See *Perry,* 871 F.2d at 1393 n. 7, for a discussion of the chronology of *Collins* and its counterparts.