STATE of Minnesota, Respondent,

v.

Paula Michelle WILLIAMS, Appellant.

No. C4–93–437.

Court of Appeals of Minnesota.

Jan. 11, 1994.

Review Granted Feb. 25, 1994.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Tom Foley, Ramsey County Atty., Steven C. DeCoster, Darrell C. Hill, Asst. County Attys., for respondent.

John M. Stuart, State Public Defender, Scott Swanson, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by LANSING, P.J., and FORSBERG and NORTON, JJ.

## OPINION

LANSING, Judge.

This appeal from a judgment of conviction and sentence for first degree controlled substance offense raises constitutional, evidentiary, and sentencing issues. The record does not demonstrate that the composition of the jury violated due process or that the trial court erred in its evidentiary or sentencing decision. We affirm.

## FACTS

Paula Williams was arrested at the Amtrak station in St. Paul after police discovered cocaine in a duffle bag she was carrying. Williams had just stepped off a train arriving from Detroit. Police stopped her after receiving a tip through a Detroit narcotics officer that a suspected drug courier matching Williams' description and bearing her name would be on the train.

Police identified Williams from the physical description, approached her at the station and asked to talk with her. Williams agreed to talk, provided correct identification, and consented to a search of her duffle bag and purse. A search of the duffle bag revealed a large amount of cocaine, hidden in a sock.

Williams testified that she was unaware there were drugs in her bag. She testified she was going to St. Paul just for the day, to get away from Detroit, where her niece had been murdered, and her father and other family members had recently died. She testified that while on the train, she had left her bag in another car when she went to the club car. She admitted she had taken a bus to St. Paul the weekend before, with a man she knew only as "George."

Several officers testified on their drug interdiction efforts, and a "drug courier profile" they had developed based on their observations. There was no defense objection to this testimony.

Williams challenged the jury venire by a pretrial motion claiming the composition of the venire so underrepresented African Americans that it violated her right to due process. The jury pool was composed of only 2.0 percent African Americans, compared to 3.7 percent of the population. Based upon an "absolute disparity analysis" yielding a disparity of 1.7 percent, the court found this was not substantial underrepresentation, and denied the motion.

The jury found Williams guilty of both counts of first degree controlled substance offense charged in the complaint. Williams moved for a downward dispositional departure from the presumptive sentence of eighty-six months executed. The presentence investigation concluded Williams was amenable to probation and recommended a stayed sentence.

The state opposed Williams' motion, and countered her argument that she played a minor or passive role in the offense and that her lack of sophistication and the recent tragedies in her family mitigated her offense. The court sentenced Williams to eighty-one months, the low end of the presumptive range.

254

## ISSUES

I. Was appellant denied her right to an impartial jury by underrepresentation of African Americans in the jury pool?

II. Was appellant denied a fair trial by the admission of "drug courier profile" evidence?

III. Is the evidence sufficient to support the convictions?

IV. Did the trial court abuse its discretion in refusing to depart dispositionally?

## ANALYSIS

### I

■ Williams contends she was denied her due process right to an impartial jury by the underrepresentation of African Americans in the jury pool. The trial court concluded that Williams had not shown a prima facie violation, which has been defined as a showing

(1) that the group alleged to be excluded is a "distinctive" group in the community;

(2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

(3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). We agree.

Evidence at the pretrial hearing established that African Americans, conceded to be a distinctive group, were 3.7 percent of Ramsey County's population but only 2.0 percent of the jury pool from which Williams' jury was chosen. This represents an "absolute disparity" of 1.7 percent. As the trial court found, this "absolute disparity" of 1.7 percent is not a substantial underrepresentation of the group under the existing case law. *See, e.g., Singleton v. Lockhart,* 871 F.2d 1395, 1398 (8th Cir.), *cert. denied,* 493 U.S. 874, 110 S.Ct. 207, 107 L.Ed.2d 160 (1989) (absolute disparity of 3.6 percent was not substantial underrepresentation).

Williams contends a "comparative disparity" figure should be used in Minnesota. She asserts the use of the "absolute disparity" figure in this state is itself racially discriminatory because it would never produce a finding of substantial underrepresentation.

■ The "comparative disparity" figure is derived by dividing the absolute disparity (here 1.7 percent) by the group's percentage in the population (here 3.7 percent). *United States v. Sanchez–Lopez,* 879 F.2d 541, 548 (9th Cir.1989). Williams contends the "comparative disparity" of forty-six percent in this case is sufficient to show substantial underrepresentation.

■ Williams cites no cases adopting the "comparative disparity" test in other jurisdictions. In Minnesota such a test would appear to require an extreme fine-tuning of the composition of each jury pool. We recognize that, at least in Ramsey County and many other counties, the "absolute disparity" test may be inadequate to detect any discrimination because the minority population percentages are too low to ever produce a sufficiently large differential. *Cf. Singleton,* 871 F.2d at 1398 (in Arkansas County, where defendant was tried, no showing of significant underrepresentation when blacks were 27.2 percent of the population, but the venire panel was 23.7 percent black). In a case in which the African American representation in the jury pool is very low, a refinement of the "absolute disparity" test may be necessary. The 2.0 percent representation here is not, however, so disproportionate as to call for a different approach.

Even if Williams could establish substantial underrepresentation under the federal constitutional standard, she must also show systematic exclusion. *Duren,* 439 U.S. at 364, 99 S.Ct. at 668. Williams attempts to meet this standard by showing consistent underrepresentation over time. The statistics she presents, however, show that for a number of weeks African Americans were overrepresented in the jury pool, and that in the last two years overall they were not nearly as underrepresented as they were on the pool from which Williams' jury was chosen. The sources of the jury venire pools, moreover, are appropriate. *See United*

States v. Cecil, 836 F.2d 1431, 1447–48 (4th Cir.), cert. denied, 487 U.S. 1205, 108 S.Ct. 2846, 101 L.Ed.2d 883 (1988) (voter registration lists are appropriate sources). Williams has failed to show systematic exclusion.

## II

Williams contends the trial court erred in receiving "drug courier profile" evidence. She concedes defense counsel did not object, but claims admission of the evidence was plain error. See generally Minn.R.Crim.P. 31.02 (plain error or error affecting substantial rights may be considered on appeal despite the lack of an objection or other challenge at trial).

 The general rule is that a defendant waives a challenge to the admission of evidence unless there is a timely objection at trial. See, e.g., State v. Cromey, 348 N.W.2d 759, 760 (Minn.1984); State v. Wellman, 341 N.W.2d 561, 564 (Minn.1983). This rule has been applied to the admission of opinion testimony. Cromey, 348 N.W.2d at 760 (no objection to pathologist's testimony that the "manner of death" was "homicidal"); Wellman, 341 N.W.2d at 564 (no objection to doctor's testimony that there was less than a one percent chance child's injury was caused by fall from couch). The admission of drug courier profile testimony was not plain error. See State v. Dana, 422 N.W.2d 246, 250–51 (Minn.1988) (defendant failed to object to physician's opinion testimony, and there was no prejudice).

## III

 Williams contends the evidence is insufficient to prove beyond a reasonable doubt that she knowingly possessed cocaine. She argues the evidence is consistent with a rational hypothesis that she was unaware of the presence of the cocaine in her bag. See State v. Bias, 419 N.W.2d 480, 484 (Minn.1988) (conviction based on circumstantial evidence will be upheld if evidence is inconsistent with any rational hypothesis except that of guilt).

This is not a case of constructive possession. The supreme court has held that

in order to convict a defendant of unlawful possession of a controlled substance, the

state must prove that defendant consciously possessed, either physically or constructively, the substance * * *.

State v. Florine, 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975). The purpose of the doctrine of constructive possession is to include within "possession" those cases in which the state cannot prove actual or physical possession. Id.

 Williams was in physical possession of the cocaine, because it was in the duffle bag she owned and was carrying. No one else was exercising dominion and control over the duffle bag at the time Williams was stopped. Cf. State v. Wiley, 366 N.W.2d 265, 270 (Minn.1985) (other persons residing in house had access to bedroom in which marijuana was found). The value of the cocaine tends to disprove the hypothesis that someone slipped it into Williams' bag. Williams' trip to St. Paul the previous weekend, a trip whose purpose she could not adequately explain and which was taken with a man she knew only by his first name, also tends to disprove the hypothesis of innocent possession.

 This court must view the evidence in the light most favorable to the state and assume the jury believed the state's witnesses and disbelieved evidence to the contrary. State v. Wahlberg, 296 N.W.2d 408, 411 (Minn.1980). A jury is in the best position to evaluate the circumstantial evidence, and its verdict is entitled to due deference. State v. Race, 383 N.W.2d 656, 662 (Minn.1986). We conclude the evidence is sufficient to disprove the hypothesis of unknowing possession.

## IV

 Williams contends the trial court abused its discretion in denying her motion for a dispositional departure. A decision to impose the presumptive sentence will be reversed only in a rare case. State v. Kindem, 313 N.W.2d 6, 7 (Minn.1981); State v. Hopkins, 486 N.W.2d 809, 812 (Minn.App.1992).

 Whether a defendant's role has been minor or passive is generally a factual issue best decided by the trial court. State v. Carson, 320 N.W.2d 432, 438 (Minn.1982). Whether a defendant is amenable to proba-

tion is also a decision within the trial court's discretion. *See generally State v. Dokken,* 487 N.W.2d 914, 917 (Minn.App.1992), *pet. for rev. denied* (Minn. Sept. 30, 1992). Although this may not have been the sentence that we would have imposed, this is not the rare case which would justify this court in reversing a presumptive sentence.

## DECISION

Appellant has not shown a due process violation by underrepresentation of African Americans in the jury pool. Admission of "drug courier profile" evidence was not plain error, and the evidence is sufficient to support the conviction. The trial court did not abuse its discretion in refusing to depart.

**Affirmed.**