Charles Laverne SINGLETON *v.* STATE of Arkansas

CR 80-69                                                      623 S.W. 2d 180

Supreme Court of Arkansas
Opinion delivered October 26, 1981
[Rehearing denied November 23, 1982.]

*Robert B. Wellenberger,* for appellant.

*Steve Clark,* Atty. Gen., by: *Victra L. Fewell,* Asst. Atty. Gen., for appellee.

RICHARD B. ADKISSON, Chief Justice. On October 30, 1979, after a trial by jury, appellant, Charles L. Singleton, was sentenced to death by electrocution for capital felony murder, and life imprisonment for aggravated robbery.

We affirm the conviction and sentence for capital felony murder, but set aside the lesser included offense of aggravated robbery. Ark. Stat. Ann. § 41-105 (1) (a) (2) (a) (Repl. 1977) prohibits the entry of a judgment of conviction on capital felony murder and the underlying specified felony. *Swaite* v. *State,* 272 Ark. 128, 612 S.W. 2d 307 (1981). Generally, this Court will not consider errors raised for the first time on appeal; however, we note that the judgment in this case was entered before our decision in *Swaite.* In death penalty cases we will consider errors argued for the first time on direct appeal where prejudice is conclusively shown by the record and this Court would unquestionably require the trial court to grant relief under Rule 37.

The victim, Mary Lou York, was murdered in York's Grocery Store at Hamburg on June 1, 1979. She died from loss of blood as a result of two stab wounds in her neck.

The evidence of guilt in this case is overwhelming. Patti Franklin saw her relative Singleton enter York's Grocery at approximately 7:30 p.m. on the day of the crime. Shortly after he entered Patti heard Mrs. York scream, "Patti go get help. Charles Singleton is killing me." Patti then ran for help. Another witness, Lenora Howard, observed Singleton exit the store and shortly thereafter witnessed Mrs. York,

who was "crying and had blood on her," come to the front door. Police Officer Strother was the first to arrive at the scene and found Mrs. York lying in a pool of blood in the rear of the store. The officer testified Mrs. York told him that Charles Singleton "came in the store, said this is a robbery, grabbed her around the neck, and went to stabbing her." She then told Officer Strother that "there's no way I can be all right, you know I'm not going to make it. I've lost too much blood." Mrs. York was taken to the hospital in an ambulance and was attended by her personal physician, Dr. J. D. Rankin. While enroute to the hospital, she told Dr. Rankin several times that she was dying and that Singleton did it. Mrs. York died before reaching the emergency room of the hospital. Officer Strother also testified that during examination of the premises, he found a money bag on the floor near the cash register which was empty, except for about $2.00 in change. He also stated that the cash register had only a small amount of change in it.

Appellant contends the trial court committed reversible error by failing to excuse for cause veniremen Waldrup, Goyne, Taylor, and Estelle. Appellant exercised a peremptory challenge on each of these prospective jurors but made no showing of record that he would have struck any other juror who actually sat on the trial of the case had he had a peremptory challenge remaining. Under such circumstances we have consistently held that appellant has shown no prejudice since he is unable to show that an objectionable juror was forced upon him without his having the privilege of exercising a peremptory challenge. *Conley* v. *State*, 270 Ark. 886, 607 S.W. 2d 328 (1980); *Arkansas State Highway Comm.* v. *Dalrymple*, 252 Ark. 771, 480 S.W. 2d 955 (1972); *Green* v. *State*, 223 Ark. 761, 270 S.W. 2d 895 (1954). In *Glover* v. *State*, 248 Ark. 1260, 455 S.W. 2d 670 (1970) the defense in exhausting his peremptory challenges used some of his challenges to remove unacceptable veniremen, then stated for the record that had he not been required to use his challenges on jurors that should have been excused for cause, a particular juror who was seated and actually served would have been challenged. In *Glover* we found that the error had been preserved and reversed the judgment.

Appellant argues for the first time on appeal that he would have exercised peremptory challenges on two specific jurors had the court granted his challenges for cause. The record does not reflect that the two jurors specified were biased or otherwise unqualified to serve. This Court has consistently held that it will not consider alleged errors raised for the first time on appeal. *Wicks* v. *State*, 270 Ark. 781, 606 S.W. 2d 366 (1980).

Appellant next argues that the trial court erred in admitting as hearsay the statements made by the victim. The statements of the victim were admissible under two separate exceptions to the rule against hearsay. Rule 803 (2), Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

And, Rule 804 (b) (2), Uniform Rules of Evidence provides:

> (b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (2) Statement under belief of impending death. A statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death.

All of the victim's statements were related to Singleton cutting her throat and, as a result, her dying. These statements clearly fall under the excited utterance exception

to the rule against hearsay since they were made under the stress of the event.

The victim cried out to Patti Franklin that Singleton was killing her. She told Officer Strother that she was not going to make it because she had lost too much blood, and she repeatedly told her physician, Dr. Rankin, that she was dying. It is clear that all of her statements were made under the dying declaration exception to the rule against hearsay. Each of these statements were made concerning the cause or circumstances of what she believed to be her impending death.

It is argued that there was no showing by the state that Mrs. York had firsthand knowledge of the identity of the appellant. This is unsupported by any reasonable view of the evidence.

Finally, appellant asserts the trial court erred in its rulings regarding photographs of the crime scene and the victim. Appellant seems to base his argument on two primary allegations: (1) that it was error to allow Chief Kennedy to refer to photographs of the crime scene previously held inadmissible as inflammatory and, (2) that the prosecutor was guilty of misconduct in attempting to introduce a photograph of the victim's body after the trial court had ruled it inadmissible, defense counsel having stipulated to the cause of death.

Chief Kennedy testified that he took the photographs when he arrived at the crime scene. He referred to the pictures to refresh his memory of the scene while testifying at the trial. The record does not disclose a specific objection regarding Kennedy refreshing his memory. Defense counsel did state that the prosecutor's handling of the pictures was calculated to prejudice his client and asked for a mistrial. Thus, the only objection seems to be a vague allegation of prosecutorial misconduct. Rule 612, Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979) provides that a witness may refer to an object or writing to refresh his memory while testifying.

The prosecutor attempted to introduce a photograph of the victim's body to show the location of the stab wounds. Defense counsel objected on the grounds that the court had ruled the photograph of the deceased was inadmissible since defense counsel had stipulated to the cause of death. There were at least three in-chambers hearings regarding the introduction of a photograph of the deceased. The prosecutor maintained he never stipulated that the photograph should not be introduced, a position which seems to be supported by the record. The defense counsel argued that there was a stipulation that the photograph of the deceased would not be admissible and, regardless of the stipulation, the trial court's ruling should have precluded the prosecutor from attempting to introduce the photograph. The trial judge did rule that the photograph would not be admissible if the cause of death was stipulated. But, the prosecutor maintained that he did not so stipulate and that he had a right and duty to prove every essential element of the charge, and he was only attempting to show the nature and extent of the wounds and not the identity of the victim or that she was, in fact, dead.

In any event, we can say beyond a reasonable doubt that under the facts of this case no prejudice resulted to the defendant from the prosecutor's attempt to introduce a picture of the deceased. The court sustained defense counsel's objection, and none of the pictures were ever viewed by the jury. Some confusion did exist due to the prosecutor's position that he was entitled to prove his case as fully as possible, but this confusion does not constitute reversible error.

Where life imprisonment or death was imposed in the court below, the Supreme Court reviews the entire record for errors prejudicial to the rights of the appellant. Rule 36.24, Ark. Rules Crim. Proc., Ark. Stat. Ann., Vol. 4A (Repl. 1977). To facilitate this review, Rule 11 (f), Rules of the Supreme Court, Ark. Stat. Ann., Vol. 3A (Repl. 1979) was promulgated:

[T]he appellant must abstract all objections that were decided adversely to him in the trial court together with

such parts of the record as are needed for an under-standing of the objection. The attorney general will make certain that all objections have been so abstracted and will brief all points argued by the appellant and any other points that appear to him to involve prejudicial error.

This means that both the counsel for appellant and counsel for the State must examine the record page by page to be certain that all objections are brought to the Court's attention. For many years the members of this Court made that examination in capital cases before the rule was amended to read as it does now. *Earl* v. *State*, 272 Ark. 5, 612 S.W. 2d 98 (1981); *Curry* v. *State*, 270 Ark. 570, 605 S.W. 2d 748 (1980).

We have examined all objections and find no error.

Affirmed in part; reversed in part.

HICKMAN and DUDLEY, JJ., dissent in part.

DARRELL HICKMAN, Justice, dissenting. I respectfully dissent to the majority's holding which recognizes an error raised for the first time on appeal.

First, the error can hardly be described as prejudicial requiring our action. The defendant was sentenced to die and we affirmed that sentence. The defendant will be hard pressed to understand how we find prejudicial error and ignore the obvious — he gets no relief.

Next, the mere fact we would act on a petition for Rule 37 relief is presumptive and premature. We should only act when and if we are confronted with that reality. Appellate courts should not act on their own by recognizing errors not argued below. *Wicks* v. *State*, 270 Ark. 781, 606 S.W. 2d 366 (1980).

The reasons are manifold — a systematic orderly review that can be relied upon; fairness to all parties; fairness to the

134

trial court; only answering questions properly before us. It is a recognition of our proper role in a judicial system.

I find no reason in this case to depart from past practice.

DUDLEY, J., joins in this dissent.