Charles Laverne SINGLETON *v.* Roger ENDELL, Director, Arkansas Department of Correction

93-950                                        870 S.W.2d 742

Supreme Court of Arkansas
Opinion delivered February 28, 1994
[Rehearing denied March 28, 1994.]

*Jeff Rosenzweig*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Pamela Rumpz*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. On June 1, 1979, the appellant, Charles Laverne Singleton, stabbed Mary Lou York to death at York's Grocery Store in Hamburg. He was convicted of the crime on October 30, 1979. We described the evidence against Mr. Singleton as "overwhelming" and affirmed his conviction of capital felony murder and sentence to death. *Singleton* v. *State*, 274 Ark. 126, 623 S.W.2d 180 (1981), *cert. denied*, 456 U.S. 938 (1982).

In the 14 years since his conviction Mr. Singleton has pursued numerous remedies in Arkansas and federal courts. The most recent action from which this appeal arises is for a declaratory judgment to the effect that Mr. Singleton is entitled to a hearing, in keeping with the United States Supreme Court decision in *Ford* v. *Wainwright*, 477 U.S. 399 (1986), to determine

whether he is insane and thus not to be executed. The Trial Court denied the relief requested. We affirm the Trial Court's decision.

In his petition to the Trial Court, Mr. Singleton alleged that the State has been administering antipsychotic medication to him. Exhibits attached to the petition included a number of medical reports by prison physicians indicating that antipsychotic medication has been administered from 1988 through 1992. One report states that Mr. Singleton asked to be taken off the medication because he was to see some "federal doctors." The physician who wrote the report stated Mr. Singleton wanted to appear "crazy." One other report indicated Mr. Singleton asked when he could be taken off the medication and was told it should be continued. The reports state that he is not exhibiting psychotic symptoms and is in "remission." No report indicates that Mr. Singleton refused medication or objected to it, other than as noted above.

Also attached as an exhibit to the petition is an undated affidavit asking that the appeal be dropped because Singleton lacks the courage to kill himself and, death being his only escape, he will let "you," apparently meaning the State, do it. The affidavit is signed, "God the Father, Adam, the Christ, King Charles Laverne, Lamar, Lamont Singleton."

Mr. Singleton's counsel wrote to the appellee, Mr. Endell, the Director of the Department of Correction, asking that Mr. Singleton be evaluated to determine his eligibility for execution. A response on behalf of Mr. Endell, written by Max J. Mobley, Assistant Director, Treatment Services, appeared as an exhibit to the petition. The response, in pertinent part, was as follows:

> The Director referred your letter of November 30, 1992, to my attention. I have spoken with the psychiatrist who is the clinical manager of Charles Singleton's mental health treatment. He indicates that at this time he does not have clinical concerns which would serve as the basis for a referral to the state hospital. Therefore, the Director has no basis to request intervention on the part of the state hospital.

Based on the affidavit and the physician reports, Mr. Singleton asked the Trial Court to declare that he is not competent

to be executed, citing Ark. Const. art. 2, § 9, and the Eighth Amendment to the United States Constitution as interpreted in *Ford* v. *Wainwright, supra.* He also sought a declaration that the State violates his rights by medicating him to make him appear competent. He asked for an order that the State cease administration of antipsychotic drugs and that the State be ordered to conduct a psychiatric examination in accordance with the requirements found in the *Ford* case.

In denying the declaratory relief sought, the Trial Court held that Mr. Singleton's only avenue of relief is prescribed in Ark. Code Ann. § 16-90-506(d)(1) (Supp. 1993). The order noted that Mr. Singleton had sought an evaluation pursuant to that statute and that Mr. Endell had determined, pursuant to the statute, that there were no reasonable grounds to believe that Mr. Singleton was insane and thus declined to refer him to the State Hospital. This procedure was held to have exhausted Mr. Singleton's state remedies, but the Trial Court noted that Mr. Singleton has petitioned a federal court for the same relief sought here.

The State attached to its response a copy of Mr. Singleton's petition for *habeas corpus* in the federal court. The State's argument in response to Mr. Singleton's argument in this appeal is that declaratory judgment is not proper because it is the subject of another proceeding, and thus the Trial Court properly denied relief. The State has cited no case in which a declaratory judgment was sought and dismissed because another action seeking essentially the same relief was filed *subsequent* to the complaint for declaratory judgment.

The only cases we have found in which that situation occurred held that dismissal of the declaratory judgment action was not required. *Associated Indemnity Corp.* v. *Wachsmith*, 99 P.2d 420 (Wash. 1940), citing *E.W. Bliss Co.* v. *Cold Metal Process Co.*, 102 F.2d 105 (6th Cir. 1939). It may make a difference to the propriety of pursuing declaratory relief that the plaintiff filed both the actions in this case. We cannot tell from the *Associated Indemnity Corp.* case whether that was so in that instance. In any event, we are disinclined to follow the State's recommendation that we affirm on procedural grounds due to the lack of any cited authority in support of it.

The State's main argument is that the decision in the *Ford* case does not require that an inmate in Mr. Singleton's situation be given a hearing. True, the precise question in the *Ford* case was whether Ford was entitled to a hearing in a federal court. The answer to that question depended, however, upon the constitutional sufficiency of proceedings in Florida to protect Ford's Eighth Amendment right not to be executed while insane. We can hardly ignore the United States Supreme Court's guidance in determining whether the law of this State is constitutionally adequate when challenged. This Court's duty is to support the Constitution of the United States, and we cannot agree with the State's apparent position that whatever rights Mr. Singleton may have are to be protected in a federal court but not here.

In *Rector* v. *Clinton*, 308 Ark. 104, 823 S.W.2d 829 (1992), a death row inmate claiming to be insane challenged § 16-90-506(d)(1), as it then appeared, as being unconstitutional. We said in a brief *per curiam* opinion that the circuit court lacked jurisdiction to consider the petition for declaratory relief, mandamus, and prohibition because matters occurring after the commission of the crime, including a claim of "current insanity," fall within the purview of the Governor in the exercise of clemency. Despite that pronouncement, however, this Court concluded its opinion as follows: "Arkansas law does not pose for execution of a person who may be mentally deficient a standard different from that declared by the United States Supreme Court in *Ford* v. *Wainwright*." Thus, regardless of our conclusion that a circuit court could not stay an execution on the basis of a ground which should be relegated to the area of clemency, we obviously and properly reviewed the constitutionality of our statute governing the manner in which the executive branch should deal with a claim of insanity by a death row inmate. We do so again in this case.

We note that in the petition before the federal court, Mr. Singleton pursues his argument that administration of antipsychotic medication violates his constitutional rights, citing *Washington* v. *Harper*, 494 U.S. 210 (1990), and *Perry* v. *Louisiana*, 498 U.S. 38 (1990).

The *Perry* case resulted in the Supreme Court of Louisiana, upon remand from the United States Supreme Court, holding that the administration of such medication to a death row inmate

against his will was indeed a constitutional violation. *State of Louisiana* v. *Perry,* 610 So. 2d 746 (1992). Mr. Singleton does not mention the *Perry* case in the argument to this Court.

In *Washington* v. *Harper, supra,* an inmate in the Washington prison system argued his right not to be medicated for manic-depressive disorder against his will. Reversing a decision by the Washington Supreme Court, the United States Supreme Court held the safeguards provided by Washington law were sufficient and did not preclude the State from medicating the prisoner prior to the prescribed hearing on the issue if he posed a danger to himself or others. Mr. Singleton mentions *Washington* v. *Harper, supra,* only in passing, and we do not regard the issue of the constitutionality *vel non* of the administration of antipsychotic drugs to Mr. Singleton as being before us. No argument is made on the point, and it is apparent that Mr. Singleton would prefer to present the medication issue exclusively in the federal court.

In his argument here, Mr. Singleton attacks § 16-90-506(d)(1) as being insufficient to comply with the requirements set out in the *Ford* case in which Mr. Justice Marshall, on behalf of himself and three other Justices, concluded that the execution of an insane person violates the Eighth Amendment. The opinion dwelt upon the means by which a person claiming to be insane could assert the right not to be executed.

> In a habeas corpus proceeding, "a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts." *Townsend* v. *Sain,* 372 U.S. 293 (1963). The habeas corpus statute, following this Court's decision in *Townsend,* provides that, in general, "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction . . ., shall be presumed to be correct." and an evidentiary hearing not required. 28 U.S.C. § 2254(d).

At issue in the *Ford* case was the Florida law which directed the Governor of that State, when informed that a person under sentence of death may be insane, to appoint a commission of three psychiatrists to examine the prisoner. Upon receipt of the report of the commission, the Governor was required to decide

whether the convicted person had the mental capacity to understand the nature of the death penalty and the reasons why it was imposed upon him.

Mr. Justice Marshall's opinion found several flaws in the Florida mechanism for protecting the right at issue. First, the "state practice does not permit any material relevant to the ultimate decision to be submitted on behalf of the prisoner facing execution." Second, there is a "denial of any opportunity to challenge or impeach the state-appointed psychiatrists' opinions." Third, the Florida law resulted in "placement of the decision wholly within the executive branch." The opinion then states:

> Having identified various failings of the Florida scheme, we must conclude that the State's procedures for determining sanity are inadequate to preclude federal redetermination of the constitutional issue. We do not suggest that only a full trial on the issue of sanity will suffice to protect the federal interests; we leave to the State the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences. It may be that some high threshold showing on behalf of the prisoner will be found a necessary means to control the number of nonmeritorious or repetitive claims of insanity. Cf. *Pate* v. *Robinson*, 383 U.S. 375 (1966) (hearing on competency to stand trial required if "sufficient doubt" of competency exists). Other legitimate pragmatic considerations may also supply the boundaries of the procedural safeguards that feasibly can be provided. [Footnote omitted.]

As noted above, Mr. Justice Marshall's opinion expressed his views and those of three other Justices. Two Justices dissented on the ground that there is no constitutional right of an insane person not to be executed. Two justices found no Eighth Amendment protection but concurred in the result on the basis that Florida law had created the right of an insane person not to be executed but had not provided sufficient procedural safeguards to protect that right.

Mr. Justice Powell concurred in the result, agreeing that the Eighth Amendment provides a right of an insane person not to be executed, but his opinion expressed a view which would nar-

row the procedural means a state must provide to protect the right of an insane person not to be executed. Mr. Justice Powell's opinion thus expresses the law of the land. *Marks* v. *United States*, 430 U.S. 188 (1977).

■ Mr. Justice Powell agreed that, in order for a state court's determination of sanity to be given deference in accordance with 28 U.S.C. § 2254(d), it is insufficient that the decision be left to a governor. He also agreed that it is insufficient to rely solely on examination by state appointed psychiatrists. He stated, however, that he "would not require the kind of full-scale 'sanity trial' that Justice Marshall appears to find necessary." The essence of his controlling opinion is this:

> . . . petitioner does not make his claim of insanity against a neutral background. On the contrary, in order to have been convicted and sentenced, petitioner must have been judged competent to stand trial, or his competency must have been sufficiently clear as not to raise a serious question for the trial court. The State therefore may properly presume that petitioner remains sane at the time sentence is to be carried out, and may require a substantial threshold showing of insanity merely to trigger the hearing process.
>
> . . .
>
> . . . ordinary adversarial procedures — complete with live testimony, cross-examination, and oral argument by counsel — are not necessarily the best means of arriving at sound, consistent judgments as to a defendant's sanity.
>
> . . .
>
> The State should provide an impartial officer or board that can receive evidence and argument from the prisoner's counsel, including expert psychiatric evidence that may differ from the State's own psychiatric examination. [Footnotes omitted.]

It would be difficult for us to hold that § 16-90-506(d)(1) does not fulfill the requirements stated by Mr. Justice Powell. Here is the language of the statute:

When the Director of the Department of Correction is satisfied that there are reasonable grounds for believing that an individual under sentence of death is not competent, due to mental illness, to understand the nature and reasons for that punishment, the director shall notify the deputy Director of the Division of Mental Health Services of the Department of Human Services. The Director of the Department of Correction shall also notify the Governor of this action. The Division of Mental Health Services shall cause an inquiry to be made into the mental condition of the individual within thirty (30) days of receipt of notification. The attorney of record of the individual shall also be notified of this action, and reasonable allowance will be made for an independent mental health evaluation to be made. A copy of the report of the evaluation by the Division of Mental Health Services shall be furnished to the Division of Mental Health Services of the Department of Correction, along with any recommendations for treatment of the individual. All responsibility for implementation of treatment remains with the Division of Mental Health Services of the Department of Correction.

(A) If the individual is found competent to understand the nature of and reason for the punishment, the Governor shall be so notified and shall order the execution to be carried out according to law.

(B) If the individual is found incompetent due to mental illness, the Governor shall order that appropriate mental health treatment be provided. The director may order a reevaluation of the competency of the individual as circumstances may warrant.

We stated the earlier version of the statute was not unconstitutional in our 1992 *per curiam* opinion in *Rector* v. *Clinton, supra.* Act 914 of 1993 rewrote the statute to provide for the notification of counsel for the inmate and "reasonable allowance" for "an independent mental health evaluation." The current version, applicable in this case, thus differs markedly from the Florida law considered in the *Ford* case. The Florida Governor specifically directed that attorneys for Ford not participate in the

examination in any adversarial manner. He also refused to review materials provided by Ford's counsel after the examination concluded. As Mr. Justice Marshall reported, that was in keeping with "the present Governor's 'publicly announced policy of excluding all advocacy on the part of the condemned from the process of determining whether a person under a sentence of death is insane.' *Goode* v. *Wainwright*, 448 So. 2d 999, 1001 (Fla. 1984)." We cannot know that Mr. Singleton and his counsel would be precluded from participating and presenting evidence of his insanity if such a hearing were held pursuant to § 16-90-506(d)(1). We cannot agree with Mr. Singleton's conclusion that the statute is constitutionally inadequate.

Five Justices of the United States Supreme Court have concluded that it may be necessary that a state impose a "high" or "substantial threshold" over which a death row inmate must step in order to be entitled to a hearing on the issue of the Eighth Amendment right not to be executed while insane. Except for the bizarre undated affidavit apparently written by Mr. Singleton, the evidence presented to the Trial Court in this case consisted of reports of treating physicians that Mr. Singleton's psychosis was in remission. We cannot say the "threshold," imposed in the statute, *i.e.*, "When the Director . . . is satisfied that there are reasonable grounds . . . ." has been crossed. We are not oblivious to the fact that this "threshold" is erected in the executive branch of government. While that may seem incongruous with Mr. Justice Powell's conclusion that a governor should not have the *final* say after there has been an examination, we are given no guidance on the matter of whether the *initial* decision whether there is to be an examination, which seems to us to be equally important, must reside somewhere other than with a member of the executive branch such as the Director of the Department of Correction. The only reasonable alternative, it seems, would be to require that such a decision be made by a court, and that would surely be inconsistent with Mr. Justice Powell's reticence to require a "sanity trial" in every case.

Again we note that Mr. Singleton has not sufficiently pursued before us, as he is doing in the concurrent federal proceeding, an argument that administering antipsychotic drugs violates his rights. Our holding is solely that Mr. Singleton has not demonstrated that § 16-90-506(d)(1) is unconstitutional or that

it has been improperly applied in this case to deny him a sanity examination.

Affirmed.

CORBIN, J., not participating.