# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 95-3032

———————

Charles Laverne Singleton,       *
                                 *
            Appellant,           *
                                 *       Appeal from the United States
     v.                          *       District Court for the
                                 *       Eastern District of Arkansas.
Larry Norris, Director,          *
Arkansas Department of           *
Correction,                      *
                                 *
            Appellee.            *

———————

Submitted:  February 14, 1996

Filed:  March 12, 1997

———————

Before WOLLMAN, HEANEY, and BRIGHT, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

Charles Laverne Singleton appeals from the district court's[1] order dismissing his petition for writ of habeas corpus.[2] We affirm.

Singleton was sentenced to death in 1979 by the Circuit Court

———————————

[1]The Honorable Garnett Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

[2]In view of our holding on the merits of Singleton's appeal, we need not decide whether, as the State contends, the recently enacted Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1217, bars our consideration of Singleton's current petition.

of Ashley County, Arkansas, for capital murder arising out of the death of a storekeeper whom Singleton stabbed during the course of a robbery.[3]  The sentence and conviction were affirmed by the Supreme Court of Arkansas.  Singleton v. State, 623 S.W.2d 180 (Ark. 1981), cert. denied, 456 U.S. 938 (1982).  Singleton's petition to proceed pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure was denied without written opinion in 1982.

Singleton then filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Arkansas.  In Singleton v. Lockhart, 653 F. Supp. 1114 (E.D. Ark. 1986), the district court vacated the death penalty on the basis of the prohibition against double counting announced by this court in Collins v. Lockhart, 754 F.2d 258 (8th Cir.), cert. denied, 474 U.S. 1013 (1985).  The district court dismissed Singleton's contentions regarding the guilt phase of his trial and deferred the other issues relating to the penalty phase and the death sentence.

Both Singleton and the State appealed from the district court's ruling.  Following oral argument in this court but before our decision, the United States Supreme Court decided Lowenfield v. Phelps, 484 U.S. 231 (1988).  After supplemental briefing and reargument, we held, based upon our contemporaneously filed opinion in Perry v. Lockhart, 871 F.2d 1384 (8th Cir.), cert. denied, 493 U.S. 959 (1989), that Lowenfield had implicitly overruled Collins.  Accordingly, we reversed the district court's ruling setting aside the death sentence and ordered that the sentence be reinstated.  We affirmed the district court's denial of Singleton's guilt phase contentions.  Singleton v. Lockhart, 871 F.2d 1395 (8th Cir.),

---

[3]Singleton was convicted under Ark. Stat. Ann. § 41-1501. That section has been codified as Ark. Code Ann. § 5-10-101(a) (Supp. 1995).

<u>cert. denied</u>, 493 U.S. 874 (1989).

On remand, the district court took up the matter of Singleton's remaining contentions.  On July 12, 1990, the district court denied those claims and dismissed the petition.  <u>Singleton v. Lockhart</u> (E.D. Ark. PB-C-82-165).  On appeal, we affirmed the dismissal.  <u>Singleton v. Lockhart</u>, 962 F.2d 1315 (8th Cir.), <u>cert. denied</u>, 506 U.S. 964 (1992).

In December of 1992, Singleton filed an action in the Circuit Court of Jefferson County, Arkansas, alleging that he was incompetent to be executed and that he had not been afforded the procedural guarantees outlined in <u>Ford v. Wainwright</u>, 477 U.S. 399 (1986).

While the state court action was pending, the United States Supreme Court granted certiorari in <u>Tennessee v. Middlebrooks</u>, 507 U.S. 1028 (1993), a case that would again have presented the issue of double counting in capital sentencing cases.  Shortly thereafter, an execution date was set for Singleton.

Singleton then filed the present petition, alleging both the double counting and the <u>Ford v. Wainwright</u> claims.  In view of the pending state court action and what it assumed would be a forthcoming decision in <u>Tennessee v. Middlebrooks</u>, the district court held the petition in abeyance while the state court litigation proceeded.  In <u>Singleton v. Endell</u>, 870 S.W.2d 742 (Ark.), <u>cert. denied sub nom.</u> <u>Singleton v. Norris</u>, 115 S. Ct. 419 (1994), the Supreme Court of Arkansas rejected Singleton's <u>Ford v. Wainwright</u> claims.  Thereafter, the district court held two hearings on Singleton's present petition.  The first, held on May 17, 1995, related to Singleton's competency to be executed.  The second, relating to Singleton's claim of actual innocence, was held

on July 24, 1995.

The district court found that Singleton, who was voluntarily taking antipsychotic medication, was competent. The district court, noting that the Supreme Court had dismissed as improvidently granted the writ of certiorari in <u>Tennessee v. Middlebrooks</u>, <u>see</u> 510 U.S. 124 (1993), rejected Singleton's double counting and actual innocence claims. It is from the denial of his claim of unconstitutional double counting that Singleton now appeals. Although he raises the possibility that he may in the future have a claim of incompetency, Singleton concedes that he currently has no support for such a claim in view of his voluntary ingestion of antipsychotic medication. Singleton does not appeal from the denial of his claim of actual innocence.

Singleton asks that we reconsider our decision in <u>Perry</u> that <u>Lowenfield v. Phelps</u> implicitly overruled our earlier double counting holding in <u>Collins v. Lockhart</u>. He contends that the Arkansas capital murder statute does not provide the narrowing function mandated by the Constitution. We as a panel are not at liberty to overrule the established law of the circuit, however, <u>see, e.g.</u>, <u>Snell v. Lockhart</u>, 14 F.3d 1289, 1305 (8th Cir.), <u>cert. denied</u>, 115 S. Ct. 419 (1994), and thus <u>Perry</u> must stand as our court's interpretation of the Arkansas capital murder statute. <u>See</u> <u>Wainwright v. Lockhart</u>, 80 F.3d 1226, 1231 (8th Cir.), <u>cert. denied</u>, 117 S. Ct. 395 (1996), <u>petition for cert. filed</u>, No. 96-7351 (U.S. Jan. 7, 1997); <u>Ruiz v. Norris</u>, 71 F.3d 1404, 1408 (8th Cir. 1995), <u>cert. denied</u>, 117 S. Ct. 384 (1996); <u>Snell v. Lockhart</u>, 14 F.3d at 1305.

Following the submission of this appeal, the Supreme Court of Arkansas filed its opinion in Brown v. State, 929 S.W.2d 146 (Ark. 1996), which holds that second-degree murder is not a lesser included offense of capital felony murder. We granted Singleton's motion that the parties be permitted to file supplemental briefs on the question of the impact of the holding in Brown on the narrowing function of the Arkansas capital murder statute.

In Wainwright v. Norris, No. 94-3525EA (8th Cir. Jan. 2, 1997) (order), and in Ruiz v. Norris, 104 F.3d 163 (8th Cir. 1997), petition for cert. filed, No. 97-7352 (Jan. 7, 1997), we held that Brown does not read out of section 5-10-101(a) the narrowing element that the killing be done "under circumstances manifesting extreme indifference to the value of human life." Wainwright, order at 2; Ruiz, 104 F.3d at 165-66. Because we see no material differences between the circumstances of Singleton's conviction and those in Wainwright and Ruiz, we reject Singleton's contention that Brown eviscerates the basis of our holding in Perry that the Arkansas capital felony murder statute adequately narrows the class of death-eligible murderers.

As indicated above, Singleton makes no claim that he is currently incompetent to be executed. Accordingly, the district court's ruling on that stands unchallenged and is thus affirmed. Our ruling on this issue does not foreclose Singleton from raising a future claim of incompetence based upon conditions different from those that led to the district court's ruling in the present case, subject, of course, to whatever procedural objections the State may raise to such a claim.

The order dismissing the petition for writ of habeas corpus is affirmed.

HEANEY, Circuit Judge, concurring.

I.

Sadly, I am compelled to concur in the result of this case. With respect to the double-counting issue raised by Singleton, I too see no material difference between his claim and this court's recent decisions in Ruiz v. Norris, No. 94-3402EA (8th Cir. Jan. 3, 1997) and Wainwright v. Norris, No. 94-3525EA (8th Cir. Jan. 2, 1997) (order). I believe that the Eighth Amendment's narrowing requirement prohibits the use of a pecuniary-gain motive as the sole aggravating circumstance to justify a death sentence in a robbery-murder case. Absent further review of this issue by either our court en banc or the United States Supreme Court, however, my hands are tied.

Although I recognize that the issue is not before us at this time, I also feel compelled to address briefly Singleton's competency to face execution in light of the substantial record presented on this point. While the record is unclear as to whether Singleton consented to the initiation of his treatment with anti-psychotic and antidepressant medications, there is no question that he will not voluntarily stop taking his medications, even for the limited purpose of assessing his competency without the drugs and, in his own words, "not even to save my life." The district court determined that under the influence of his medications Singleton is competent to be executed and Singleton does not appeal that issue. Apparently, no adequate record exists to assess Singleton's competency without his medications. The question whether states that impose the death penalty may execute a person whose competence has been chemically-induced (for reasons other than to expedite the execution) is problematic and unresolved. At a minimum, I want to

-7-

make clear that nothing in this panel's opinion should be construed to foreclose Singleton from making a future claim that he is incompetent to be executed.

## II.

Finally, although I am bound to uphold the law, I write separately to add my voice to those who oppose the death penalty as violative of the United States Constitution. My thirty years' experience on this court have compelled me to conclude that the imposition of the death penalty is arbitrary and capricious. At every stage, I believe the decision of who shall live and who shall die for his crime turns less on the nature of the offense and the incorrigibility of the offender and more on inappropriate and indefensible considerations: the political and personal inclinations of prosecutors; the defendant's wealth, race, and intellect; the race and economic status of the victim; the quality of the defendant's counsel; and the resources allocated to defense lawyers. Put simply, this country's unprincipled death penalty selection process is inconsistent with fundamental principles of due process.

The importance of a defendant's economic status in death-eligible cases cannot be overstated particularly in light of the direct correlation between a defendant's ability to pay and the competency of his legal representation. Wealth enables a defendant to employ the best lawyers at the earliest stages in the proceeding thereby affording the best chance of avoiding the death penalty. The government spares no expense in prosecuting capital cases. Only experienced and well-compensated defense lawyers, with the assistance of qualified investigators and experts, can be expected to adequately defend such cases. In reality, lawyers appointed by the states to defend capital cases for indigent defendants are

-8-

often so underqualified, underfunded, and undercompensated that trials are mere shams of an adversarial proceeding. Take the case at bar: Singleton's trial counsel was appointed under Arkansas law and received, according to appellant's counsel at oral argument, a total of $350 compensation plus $100 for investigation.[4] Without adequate funding, even a qualified and experienced criminal lawyer is constrained from building a credible defense and establishing the presence of mitigating factors which weigh against the imposition of death. Too often, only unexperienced and unqualified lawyers will take appointments to defend poor defendants and the resulting representation is grossly inadequate.[5] This same pattern is repeated with respect to the legal services available to indigent persons at the appellate and post-conviction stages of capital cases.

Adding to the arbitrariness inherent in the system is our society's deeply-rooted problem of racial bias. Studies have shown

---

[4]Subsequent to Singleton's trial, the Arkansas statute was amended to increase the attorney's fee cap in capital cases to $1000. See Ark. Code. Ann. 16-92-108 (1987). Later still in 1993, the state legislature removed the cap on fees for attorneys appointed to represent indigent persons. 1993 Ark. Acts 1193 § 20.

[5]As one legal expert reports, the various approaches to indigent defense among the states share several common features:

> They evince the gross underfunding that pervades indigent defense. They are unable to attract and keep experienced and qualified attorneys because of lack of compensation and overwhelming workloads. Just when lawyers reach the point there they have handled enough cases to begin avoiding basic mistakes, they leave criminal practice and are replaced by other young, inexperienced lawyers who are even less able to deal with the overwhelming caseloads.

Stephen B. Bright, "Counsel for the Poor: The Death Sentence Not for the Worst Crime but for the Worst Lawyer," 103 Yale L. R. 1835, 1851 (1994) (footnote omitted).

that persons who kill white victims are sentenced to death more often than persons who kill black victims and that, in some jurisdictions, black defendants receive the death penalty more often than do white defendants. Systematic racial discrimination in capital sentencing is one of the reasons cited by the American Bar Association in support of its recent resolution calling for a referendum on carrying out death sentences in any state until such time as adequate safeguards are in place to ensure fair and impartial administration and the risk of killing innocent persons can be minimized. Resolution No. 107 of the House of Delegates, approved Feb. 3, 1997 (A.B.A. Sec. Indiv. Rights Resp. Rep. at 12-14). As Justice Blackmun noted in his eloquent dissent on the day he vowed to never again "tinker with the machinery of death":

> Even under the most sophisticated death penalty statutes, race continues to play a major role in determining who shall live and who shall die. Perhaps it should not be surprising that the biases and prejudices that infect society generally would influence the determination of who is sentenced to death, even with the narrower pool of death-eligible defendants selected according to objective standards.

Callins v. Collins, 114 S. Ct. 1127, 1135 (1994) (Blackmun., J., dissenting).

Moreover, I am not convinced that we have in place adequate legal procedures to ensure that capital sentences are not handed down in violation of the law. Recent changes in our federal habeas corpus rules have only compounded the difficulty of the federal courts to adjudicate federal claims in capital cases. As a result of this complex legal morass, many persons sentenced to death have legitimate constitutional claims that will never be addressed on the merits by any court.

In sum, although I am compelled to adhere to the law, I nonetheless announce my personal view that this nation's administration of capital punishment is simply irrational, arbitrary, and unfair. The problems are inherent in the enterprise itself. Because I am confident that no death penalty system can ever be administered in a rational and consistent manner, I do not explore at this time whether the death penalty itself (in some "perfect" application) violates the Eighth Amendment's prohibition against cruel and unusual punishment in that it fundamentally denies the humanity and intrinsic worth of the men and women whom the state puts to death.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.