Charles Laverne SINGLETON *v.* Larry NORRIS, Director,
Arkansas Department of Correction

CR 98-218                                      964 S.W.2d 366

Supreme Court of Arkansas
Opinion delivered March 9, 1998
[Petition for rehearing denied April 23, 1998.*]

---

\* ARNOLD, C.J., and GLAZE and CORBIN, JJ., dissent. *See* 332 Ark. 668, 964 S.W.2d 366 (1998).

*Jeff Rosenzweig*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kelly K. Hill*, Deputy Att'y Gen., *Todd L. Newton*, Asst. Att'y Gen., and *Jonathan D. Perez*, Asst. Att'y Gen., for appellee.

PER CURIAM. Petitioner Charles Laverne Singleton has petitioned this court for a stay of his execution, which is scheduled for March 11, 1998. The basis for his petition is the fact that he currently has pending before the Jefferson County Circuit Court a petition for declaratory judgment and for the issuance of all writs and orders necessary to enforce that declaratory judgment. According to Singleton's petition for stay before this court, the essential question presented in the circuit court petition is "whether the State may forcibly medicate a death-sentenced inmate in order to make him competent to be executed." His reason for requesting a stay of execution from this court is his acknowledgment that there is some question as to whether the circuit court has the power to grant such a stay.

The circuit court petition was filed by Singleton on February 17, 1998, and the State has not responded. At the time this petition in circuit court was filed, his execution date had been set by the Governor. According to the State, Singleton is attempting to halt his execution on a variety of fronts. He currently has pending, in addition to the petition in this court and Jefferson County Circuit Court, an application for stay of execution in the United States Court of Appeals for the Eighth Circuit, a request to the same Eighth Circuit Court of Appeals to file his third federal habeas corpus action in federal district court, and a request to the Governor for executive clemency.

█ The standard under our law for determining competency for purposes of execution is whether a condemned person understands "the nature of and reason for the punishment." Ark. Code Ann. § 16-90-506(d)(1)(A) (Supp. 1997). Though the issue of Singleton's general competency due to voluntary medication was delved into by the district court in *Singleton v. Norris*, PB-C-93-425 (E.D. Ark. July 25, 1995) (*Norris*), that court also observed that competency in connection with forced medication and his execution was not ripe for review and added:

> Likewise, if petitioner later seeks to challenge any forced administration of his competency-inducing medication in connection with his execution, he will also have to first raise any such challenge in an Arkansas forum.

*Id.*, slip op. at 5 (citations omitted). *See also Id.*, slip op. at 5, n.4.

Prior to the district court's decision in *Norris, supra*, this court had decided an appeal regarding whether Singleton was entitled to a hearing as provided in *Ford v. Wainwright*, 477 U.S. 399 (1986), on whether he was insane and thus could not be executed. *Singleton v. Endell*, 316 Ark. 133, 870 S.W.2d 742 (1994) (*Singleton I*), *cert. denied*, 513 U.S. 960 (1994). The trial court denied the relief requested by Singleton, and we affirmed. In doing so, we considered only Singleton's challenge that § 16-90-506(d)(1) was procedurally insufficient to comply with the requirements of *Ford v. Wainwright, supra*. We held that our procedures were not insufficient. But we specifically declined to review the issue of the administration of antipsychotic medication to Singleton without his objection because, as we stated then, it was apparent to us that Singleton preferred to present the medication issue exclusively in federal court. We concluded that our statutory procedure for deciding the competency issue passed constitutional muster.

Three things are clear to us from the district court's decision in *Norris* and our own opinion in *Singleton I*: (1) the precise issue pending before the Jefferson County Circuit Court was not ripe until the State determined to medicate Singleton involuntarily in 1997, and the Governor set his execution date, (2) we did not reach this issue in *Singleton I* because it was not presented to us,

and (3) the federal district court in *Norris* contemplated that the issue now pending in Jefferson County Circuit Court should first be raised in "an Arkansas forum."

■ We turn then to the question of whether the Jefferson County Circuit Court or this court has jurisdiction to stay an execution. We have recently held that a circuit court does not have jurisdiction to stay an execution. *Rector v. Clinton*, 308 Ark. 104, 823 S.W.2d 829 (1992) (per curiam), *citing Howell v. Kincannon*, 181 Ark. 58, 24 S.W.2d 953 (1930). Our caselaw on this point is explicit and unmistakable.

■ As to whether this court may stay an execution, the apposite state statute provides that a "condemned felon" may be granted a reprieve by the Governor or by "writ of error from the Supreme Court" or by stay "by any competent judicial proceeding." Ark. Code Ann. § 16-90-506(a)(1) (Supp. 1997). Further on in that same statute, it provides that the only officers that may suspend an execution are the Governor, the Director of the Department of Correction in cases of insanity or pregnancy, and "[i]n cases of appeals, the Clerk of the Supreme Court, as prescribed by law." Ark. Code Ann. § 16-90-506(c)(3) (Supp. 1997). Thus, on the one hand § 16-90-506 appears to contemplate stays of executions by this court only in "cases of appeals" and on the other, stays by this court pursuant to a writ of error issued by this court or "by any competent judicial proceeding."

■ There is no question but that this court has previously considered § 16-90-506(c)(3), and opined that our jurisdiction is limited to appeals. *See, e.g., Howell v. Kincannon, supra.* The *Howell* case, however, did not consider § 16-90-506(a)(1) and what is meant by a stay "by any competent judicial proceeding." In a later case, this court revoked the stay of execution issued by one justice, but in doing so included this footnote in the opinion:

> It is argued in the briefs for appellee that under § 43-2621 Ark. Stats. and the concluding part of § 43-2623 Ark. Stats. (both sections from the Criminal Code of 1869), neither this Court, nor any Judge thereof, has power to suspend the execution after the date has been set by the Governor. But such argument overlooks some of the provisions of Act No. 55 of 1913 — as now

found in § 43-2617 Ark. Stats. — which provision uses this language: " . . . a writ of error from the Supreme Court, or should the execution of the sentence be stayed by any competent judicial proceeding, notice of . . . such writ of error or stay of execution shall be served upon the superintendent of the penitentiary . . . and the said superintendent shall yield obedience to the same . . . ." The said Act of 1913 constituted legislative recognition of the inherent judicial power, so the § 43-2621 and § 43-2623 Ark. Stats. cannot have the strict meaning argued for them.

*Leggett v. State*, 231 Ark. 13, 16 n.4, 328 S.W.2d 252, 255 n.4 (1959). Save for this footnote, what is meant by stay of execution "by any competent judicial proceeding" has not been discussed by this court. And the State does not address it in its response to Singleton's petition.

This petition for a stay presents this court with unique circumstances. A petition for declaratory judgment and necessary writs is currently before the Jefferson County Circuit Court which has no authority to stay an execution. A petition to stay is likewise percolating in the Eighth Circuit Court of Appeals, but the status of that petition is unknown. The petition pending in Jefferson County Circuit Court, arguably, did not become ripe for decision until Singleton was medicated involuntarily, beginning in August of 1997, and the execution date was fixed. The petition raises an issue that has not been decided by the United States Supreme Court and, as best we can determine, by any other court in this land. Indeed, the Eighth Circuit Court of Appeals expressly did not reach the issue in *Singleton v. Norris*, 108 F.3d 872 (8th Cir. 1997), *cert. denied*, 118 S. Ct. 118 (1997), and Judge Heaney in a concurring opinion referred to this precise issue as "problematic and unresolved." *Id.*, at 874 (Heaney, J., concurring). Though Singleton frames the issue broadly, we discern the issue to be whether the State can mandatorily medicate him with antipsychotic drugs in order to keep him from being a danger to himself and others when a collateral effect of that medication is to render him competent to understand the nature and reason for his execution.

Contrary to Singleton's contention in his reply to the State's response to the petition before this court, the Louisiana Supreme

Court in *State v. Perry*, 610 So.2d 746 (La. 1992), did not address this exact issue. In *Perry*, the Louisiana Supreme Court held that the State could not medicate a prisoner against his will to make him fit for execution when there was no determination that forcible medical treatment was for the purpose of safeguarding Perry and others in prison under *Washington v. Harper*, 494 U.S. 210 (1990). In the instant case, a *Harper* decision was made by a three-person Medication Review Panel on August 18, 1997, that the State did have a legitimate reason to medicate Singleton without his consent, and that decision was not appealed by him to circuit court. It was that decision to medicate Singleton forcibly and the setting of the execution date that rendered this matter ready for determination.

■ Because the issue pending in Jefferson County Circuit Court is clearly ripe for decision but no response has been made by the State, and, thus, no decision has been rendered, and, secondly, in light of the fact that the issue before that court is a constitutional issue of first impression, we deem the proceeding to be a "competent judicial proceeding" under § 16-90-506(a)(1). Ordinarily, we would hear the issue on appeal but due to the fact that the execution is two days away, the likelihood of a decision by the circuit court and a meaningful appeal to this court occurring before execution appear to be exceedingly remote. It would be an anomaly in our law with the direst of consequences if a bona fide constitutional claim made ripe by the Medication Review Panel's action in August of last year and by the fixing of an execution date could not be decided prior to execution. We, therefore, grant the stay of execution for the limited purpose of resolving this singular issue of public significance.

■ ■ In doing so, we stress once more the uniqueness of our decision today. We have been zealous in stating that once an execution date is set, the issue of a reprieve rests with the Governor. *See, e.g., Rector v. Clinton, supra.* Yet, in *Rector* the issue at hand was Rector's mental condition and, there, both the federal district court and the state trial court had found him competent for execution under the *Ford v. Wainwright* test. In the case before us today the issue that has not been resolved involves two competing policies: medicating an inmate against his will to protect him

from himself and others, which, of course, is legitimate under *Washington v. Harper, supra*, and medicating an inmate in order that he may appreciate the nature and reasons for his execution, which may not be. When all is said and done, we are convinced that this issue must be resolved before Singleton can be executed.

■ The fact that this issue is brought to us at the eleventh hour after such a long delay is of significant concern to us. Were it not for the fact that the ripeness of the issue occurred after the Medication Review Panel issued its opinion for mandatory medication on August 18, 1997, and the Governor set the date for execution, we would deny the petition for lack of jurisdiction. That, though, is what distinguishes this case from *Rector v. Clinton, supra*. We underscore, however, what we said in *Rector v. Clinton, supra*, that we will not entertain recurring last-minute appeals on the issue of current sanity which could prevent an execution indefinitely with no good reason. Here, though, as explained in this opinion, the circumstances are different.

We grant the stay in order to give the Jefferson County Circuit Court an opportunity to consider Singleton's petition.

ARNOLD, C.J., and GLAZE and CORBIN, JJ., dissent.

TOM GLAZE, Justice, dissenting. In 1979, Charles Laverne Singleton stabbed Mary Lou York to death, and upon overwhelming evidence presented at trial, Singleton was found guilty and sentenced to death. Now after nearly twenty years of state and federal court trials and appeals, Singleton is still in the courts defending himself against the death penalty. As this court said in *Rector v. Clinton*, 308 Ark. 104, 823 S.W.2d 829 (1992), "[E]ven death cases must come to an end."

Although this court's *Rector* case clearly requires a denial of Singleton's motion to stay his execution, the majority opinion, using some rather bewildering logic, attempts to distinguish *Rector*. I first set out what this court said and held in *Rector*, which is almost totally ignored by the majority.

The *Rector* case involved almost the identical situation as Singleton's, except there, we *denied* Rector's motion to stay his execution eleven years after his conviction for murdering Conway

Police Officer Bob Martin. Like Singleton, Rector filed a petition for declaratory judgment in circuit court, stating he was ineligible for execution because (1) a state cannot execute persons whose mental illness prevents comprehension of the reasons for the penalty, and (2) the Arkansas standard limiting executions of persons with mental deficiencies is more stringent than that required under the Supreme Court's decision in *Ford v. Wainwright*, 477 U.S. 399 (1986), and Arkansas's law should prevent Rector's execution if his current mental impairment prevented him from assisting his counsel in coming up with reasons to stay the execution. *Id.* at 105. In denying Rector's request to stay his execution, this court held that, under Ark. Code Ann. § 16-90-506 (1987), the circuit court lacked jurisdiction to stay execution based upon Rector's claim of current insanity, and that the matter rested with the executive branch of government. This court summarized its holding in *Rector* as follows:

> (1) The circuit court lacked jurisdiction to stay the execution on the basis of the allegation that Mr. Rector is ineligible for execution due to his mental condition; (2) even if that court had such authority, we could not disagree with its finding that there had been no change in Mr. Rector's condition since his evaluation by federal authorities in 1989; and (3) Arkansas law does not pose for execution of a person who may be mentally deficient a standard different from that declared by the United States Supreme Court in *Ford v. Wainwright. The matter of clemency rests with the executive branch.*

(Emphasis added.)

The only essential difference between Rector's situation and Singleton's is that Singleton's counsel advances the legal argument that the State cannot "forcibly" medicate a death-sentenced inmate in order to make him competent to be executed. However, if his argument had any merit, Singleton had every opportunity to have raised it both in federal court and in the state courts on several occasions. *See Singleton v. Norris*, No. PB-C-93-425 (E.D. Ark. June 2, 1995) (where Singleton raised and later abandoned the argument); *Singleton v. Endell*, 316 Ark. 133, 870 S.W.2d 742 (1994) (where Singleton chose not to mention the

issue, and the court surmised that Mr. Singleton apparently preferred to present the issue in federal court).

Confoundedly, the majority court blindly adopts Singleton's argument that our court in *Singleton* in some unspoken way looked to the federal courts to decide Singleton's issue, and the federal district court was looking for Singleton to raise the issue in state courts. With all due respect, these assumptions are balderdash! The simple fact is that Singleton chose not to raise his issue in either the federal or state court. To reiterate, all this court said in *Singleton* was "it is apparent that Mr. Singleton would prefer to present the medication issue exclusively in the federal court."

Singleton also had a third opportunity to raise his issue. The State Medication Review Panel, authorized under Ark. Code Ann. § 16-90-506 to review Singleton's examination, reviewed and concluded that Mr. Singleton should be given a trial on mandatory medication to see if he returned to a higher level of function. Singleton never questioned the Panel's decision, nor did he request its administrative review. Mr. Singleton's counsel claims he could not have obtained a legal resolution to his forcible-medication argument because Singleton previously had chosen to take medication, but now he is being "involuntarily" medicated.

Obviously, if Singleton could simply choose at will when he wants or does not want medication, the constitutional issue he raises now (and earlier raised in the U. S. District Court), might never be decided. This court, in *Endell*, recited one report where Singleton asked to be taken off the medication because he was to see some "federal doctors." And another physician reported that Mr. Singleton wanted to appear "crazy." The judicial system should not be manipulated in such fashion. This court in *Endell* would have undoubtedly reached the issue if Singleton had seriously wanted it decided. The majority court's suggestion to the contrary is wrong.

Fortunately, whether Singleton is being manipulative need not control whether he is entitled to another last-ditch opportunity to have an answer to the question whether the State is medicating him in order to make him competent to be executed.

Instead, although the State has been medicating Singleton, the federal district court has found Singleton was not placed on medication to make him competent, so the State could execute him; rather, the court found he was being medicated to meet his medical needs. *See Singleton*, No. PB-C-93-425 at p. 14; *see also, Washington v. Harper*, 494 U.S. 210 (1990) (where Court held the safeguards provided by Washington law were sufficient and did not preclude the State from medicating the prisoner prior to the prescribed hearing on the issue if he posed a danger to himself or others). The federal court's finding has never been challenged or appealed. In short, Singleton's assertion that he is being forced to take medicine so he can be executed is a last minute red herring. It is untrue and not an issue. Instead, Singleton has been appropriately and lawfully receiving medication for his own medical needs, so he will not be a danger to himself or others.

In the *Singleton v. Endell* decision, we held that Singleton's remedy is under § 16-90-506(d)(1) which the court declared to be constitutional. As I pointed out above, § 16-90-506(a)(1) places Singleton's remedies for evaluation and review with the executive branch.

Lastly, the majority court offers the hollow suggestion that this court somehow has authority to stay an inmate's execution even though § 16-90-506 only gives this court such authority when appeals or writs of error are involved. No such writ or appeal is before us. Nonetheless, the majority points to language in provision (a)(1) of § 16-90-506 which reads, "or should the execution of the sentence be stayed by any competent judicial proceeding," and avails Singleton another judicial hearing. It takes little or no thought to understand that, under § 16-90-506, "a competent judicial proceeding" as far as the Arkansas Supreme Court is concerned is where an appeal or a writ of error is involved. Again, our *Rector* decision upheld the constitutionality of § 16-90-506 placing matters involving insanity with the executive branch, but the majority opinion dismantles the executive branch's role in the reviewing and deciding of such matters.

To summarize, I submit that Arkansas's trial and appellate procedures should be evenly interpreted, applied, and enforced.

Over a twenty-year period, Singleton has had every opportunity to raise his full panoply of defenses, constitutional and otherwise, as to guilt and penalty. We decided as much in *Rector* when this court denied Rector any further stays. Maybe, in the future, Arkansas will decide the death penalty is one the state should abandon. But, until then, the State's procedures under § 16-90-506(d)(1) should be fairly and indiscriminately followed. Mr. Singleton has been afforded due process and his other constitutional guarantees. To follow, now, the procedures established in § 16-90-506(d)(1) will serve only to minimize the enormous delays between when capital-murder convictions are rendered and when a death-penalty sentence is administered.

As was done in *Rector*, I would deny Singleton's stay motion.

ARNOLD, C.J., and CORBIN, J., join this dissent.